Lisa Gail DAVIS, Appellant,

v.

Gregory Scott DAVIS, Appellee.

No. 05–89–01228–CV.

Court of Appeals of Texas,
Dallas.

Aug. 13, 1990.

Larry L. Martin, Dallas, for appellant.

Gregory Scott Davis, Dallas, for appellee.

Before HOWELL, STEWART, and LAGARDE, JJ.

## OPINION

LAGARDE, Justice.

Lisa Gail Davis (Mother) appeals a divorce decree, complaining about the terms of child visitation incorporated into the decree. Mother contends that, although the jury awarded managing conservatorship to her, the trial court, in effect, stripped her of that right. Gregory Scott Davis (Father), possessory conservator, maintains that the trial court acted within its discretion, and, therefore, the judgment of the trial court should be affirmed. We overrule Mother's three points of error and affirm the judgment of the trial court.

Mother and Father were married in October 1983 and had a child, Cameron Scott Davis, in May 1987. The couple separated in July 1987, and Mother filed her original petition for divorce in August 1987. The issue of managing conservatorship was submitted to a jury, and, based upon the jury's verdict, Mother was appointed sole

managing conservator of the child.[1] Father was appointed possessory conservator. The divorce became final in August 1989.

Don Watts, a psychotherapist, noted that Mother came from a home where she was forced to choose between her mother and her father following their divorce. Rita Lawrence, Mother's stepmother, testified that Mother had not seen her own father since Cameron was six months old. During the pendency of the divorce proceeding, Mother asserted that Father was not the biological father of the child and demanded that blood tests be conducted to establish paternity. Blood tests later proved that Father was the biological father of the child.[2]

Mother conceded that Father was supportive following her first divorce in June 1983 and described Father as being warm and unselfish during their marriage. She also testified that Father really cares about the child, that standard visitation would not give Father enough time to see the child, and that the child needs time with Father. She wanted Father to be involved in the child's school activities, so she asked Father, on several occasions, to participate in school activities, which he did. Matt Howell, Father's friend, described Father as a loving and capable parent. Howell noted that Father was aware of the child's eating, sleeping, and diapering schedules and that Father looked out for the child's safety by installing child-proof locks on cabinets and safety plugs for the electrical outlets in his home. Glenda Wilson, Father's friend, observed a lot of love and bonding between Father and the child. Rita Lawrence stated that Father had a very close and warm relationship with the child.

However, Mother also testified that Father suffered from a number of psychological problems, including anxiety attacks.

Watts testified that Father had anxiety attacks which were caused by repressed anger. Watts explained that Father was a very controlling person and stated that Father did not have the skills for intimacy and honesty which are needed to develop a marriage and long-standing relationship. Watts also testified that Father was sexually inhibited and that he questioned his masculinity. Father presented two clinical psychologists, Dr. Sandra Craig and Dr. Frank Wichern, who testified that they observed Father with the child and considered him to be an excellent parent who enjoyed a very loving relationship with his son. Both Craig and Wichern disagreed with Watts's portrayal of Father, and they testified that they found no evidence of emotional or interpersonal difficulties. Craig testified that she administered Father the MMPI (Minnesota Multi-phase Personality Inventory) and that the results did not confirm any sexual inhibition or masculinity issues on his part.

At the time the decree was entered by the trial court, the Dallas County guidelines for standard visitation (the Guidelines) were still in effect. The divorce decree provides the following visitation schedule for Father:

(1) First, second and fourth weekends of each month from 5:00 p.m. Thursday, or whenever school recesses, whichever is earlier, to 9:00 a.m. the following Monday, or whenever the child's school reconvenes, if the child is in school ... except that holiday possession of the above-named child herein granted to the Managing Conservator shall supersede the Possessory Conservator's weekend possession of the child. The first weekend of the month begins on the first Thursday of each month;

(2) The third Thursday of every month from 5:00 p.m. or whenever school re-

---

**1.** The child was approximately two years old at the time of trial.

**2.** It is undisputed that in 1986 Mother was sexually active with the couple's exterminator. The paternity action apparently arises out of the fact that she was sexually active with the exterminator at a time when she believed she was fertile.

cesses, whichever is earlier, to 9:00 a.m. the following Friday or whenever the child's school reconvenes, if the child is in school;

(3) Halloween in even numbered years from 4:00 p.m. until 8:00 p.m., beginning the first Halloween of the even numbered year, after the signing of this Order;

(4) Christmas vacation in odd numbered years from 5:00 p.m., or whenever school recesses on the day school is recessed for vacation (school is defined as the school in which the child is enrolled, or the public school system in which the child resides if the child is not in school) to Noon on Christmas Day, beginning the first Christmas of the odd numbered year after the signing of this Order;

In even numbered years, from Noon on Christmas Day until 9:00 a.m. the day school resumes after Christmas vacation, beginning the first Christmas of the even numbered year after the signing of this Order;

(5) Thanksgiving in even numbered years from 5:00 p.m., or whenever school recesses, whichever is earlier, the Wednesday before Thanksgiving until 9:00 a.m. the Monday immediately following the Thanksgiving holidays, or whenever the child's school reconvenes, beginning the first Thanksgiving of the even numbered year after the signing of the Order;

(6) Spring school vacation or Easter vacation in even numbered years, whichever is longer, from 5:00 p.m., or whenever school recesses (as defined under Christmas vacation) until 9:00 a.m. the day school resumes at the end of said vacation period, or whenever the child's school reconvenes, beginning the first Easter or spring school vacation of the even numbered year after the signing of the Order;

(7) Memorial Day and Labor Day weekends in odd numbered years from 5:00 p.m. the Thursday preceding that holiday weekend until 9:00 a.m. the following Tuesday, or whenever the child's school reconvenes, beginning the first of such holidays to occur in the odd numbered year after the signing of this Order;

(8) Four weeks in the summer, beginning on a Thursday that the Possessory Conservator is scheduled to have regular weekend possession and ending at least seven days prior to the beginning of school, upon thirty (30) days prior written notice to the Managing Conservator, beginning the first summer after the signing of this Order. The Possessory Conservator shall have the right to at least two of such four weeks being consecutive and uninterrupted and shall supersede weekend access herein granted to the Managing Conservator;

(9) Fourth of July holiday in even numbered years from 5:00 p.m. on July 3 to 9:00 a.m. on July 5, beginning the first of such holidays of the even numbered year after the signing of this Order;

(10) Father's Day each year from 5:00 p.m. the night before Father's Day to 6:00 p.m. on Father's Day, beginning the first Father's Day after the signing of this Order; and

(11) All other times as may be agreed upon between the parties.

In the divorce decree, Mother was given possession of the child on the third and any fifth weekends of each month from 5:00 p.m., or whenever school recesses, whichever is earlier, on Thursday until 9:00 a.m. the immediately following Monday, or whenever the child's school reconvenes, if the child is in school. The only exception was that holiday possession granted to Father supersedes Mother's weekend possession of the child. Upon thirty (30) days prior written notice to Father by Mother of the dates of such possession, Mother was given four weeks in the summer, two weeks of which are consecutive and uninterrupted and supersede weekend possession granted to Father, but cannot super-

sede summer possession granted to Father. Mother was given possession of the child over Christmas, Thanksgiving, spring or Easter school vacation, Memorial day, Labor Day, Halloween, and July 4th, alternating years with Father. Mother also was given possession of the child on Mother's Day each year from 5:00 p.m. the night before Mother's Day to 6:00 p.m. on Mother's Day.

In her first point of error, Mother asserts that the trial court erred and abused its discretion by appointing Father as the "de facto" managing conservator in contradiction of the jury's verdict. Mother claims that even though she won a jury verdict awarding her sole managing conservatorship, the trial court subverted the jury's verdict by awarding Father "visitation" during the majority of the child's waking time when he is not at daycare. Mother asserts that, as a result of the trial court's action, she was deprived of the essence of her favorable jury verdict. Mother argues that the jury's finding as to managing conservatorship is mandatory and that a trial court may not contravene a jury verdict on the appointment of a managing conservator. *In the Interest of Soliz*, 671 S.W.2d 644, 648 (Tex.App.—Corpus Christi 1984, no writ); Tex.Fam.Code Ann. § 11.13(b) (Vernon Supp.1990). Mother maintains that to properly label her as the "managing conservator," but to order specific terms of possession that strip her of her functions as managing conservator is error. *See Ramsey v. Ramsey*, 707 S.W.2d 724, 726 (Tex.App.—Beaumont 1986, no writ); *Billeaud v. Billeaud*, 697 S.W.2d 652, 653 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Dalton v. Doherty*, 670 S.W.2d 422, 470 (Tex.App.—Fort Worth 1984, no writ); *Werlein v. Werlein*, 652 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1983, no

writ). Mother also relies on the *Leaverton* case out of this Court in which this Court held that a noncustodial parent's request to increase his periods of possession to include two months in the summer is properly characterized as a suit to modify custody and not a mere modification or clarification of visitation rights. *Leaverton v. Leaverton*, 417 S.W.2d 82, 84 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). Mother asserts that, taking into consideration the time when the child is asleep and at day-care and recognizing that a substantial portion of the after-work hours are filled with feeding and bathing the child,[3] she does not have quality time with the child. Thus, Mother asserts that the child's "available time" is limited to three hours each weekday and fourteen hours each day of the weekend. At oral argument, however, Mother's attorney conceded that he knew of no case that distinguished "available time" when determining visitation schedules.

In two related points of error, Mother asserts that the trial court erred and abused its discretion by ordering a visitation schedule substantially in excess of the Dallas County visitation guidelines and by granting an excessive amount of visitation to Father. Mother maintains that the trial court's order substantially deviates from and exceeds all known guidelines applicable in the State of Texas. Mother complains that the trial court's order differs markedly from other guidelines in that the weekend visitation begins on Thursday at 6:00 p.m., rather than Friday at 6:00 p.m., and that the weekend visitation extends through the following Monday morning instead of ending on Sunday evening. Mother also asserts that Father was granted an additional weekend per month and an additional overnight visitation each month.[4]

---

3. Mother also asserts that later the child's homework will take up a substantial portion of the child's evening hours along with feeding and bathing.

4. Mother also asserts that the decree was entered a "remarkable" two days before the effective date of the statewide visitation guidelines

established by the 71st Texas Legislature. *See* Tex.Fam.Code Ann. §§ 14.032–14.034 (Vernon Supp.1990). However, we do not find this to be of any significance since the trial was conducted approximately two months before the decree was entered and since Father filed two motions for entry of judgment following the jury trial.

▊ The trial court has wide discretion with respect to custody, control, possession, and visitation matters involving the child. *Leithold v. Plass,* 413 S.W.2d 698, 701 (Tex.1967); *see Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982); *Fair v. Davis,* 787 S.W.2d 422, 431 (Tex.App.—Dallas 1990, no writ). Thus, the judgment of the trial court will be reversed only if it appears from the record as a whole that the court has abused its discretion. *Gillespie,* 644 S.W.2d at 451. This discretion is wisely vested in the trial judge in these matters because the trial judge faces the parties and the witnesses, observes their demeanor, views their personalities, and senses the forces and powers which motivate them. *Fair,* 787 S.W.2d at 431, *citing Maixner v. Maixner,* 641 S.W.2d 374, 376 (Tex.App.—Dallas 1982, no writ). Even though the trial court may not enter a decree that contravenes the verdict of the jury with respect to appointing a managing conservator, *see* TEX.FAM.CODE ANN. § 11.13(b) (Vernon Supp.1990), the trial court may set the time and conditions for possession of or access to the child by the possessory conservator. TEX.FAM.CODE ANN. § 14.03(a) (Vernon 1986). The best interest of the child is always the primary consideration in determining the questions of managing conservatorship, possession, and support and access to the child. TEX. FAM.CODE ANN. § 14.07 (Vernon 1986). Moreover, liberal visitation rights do not, as a matter of law, constitute divided custody, *Cherry v. Cherry,* 384 S.W.2d 912, 914 (Tex.Civ.App.—Houston 1964, no writ), and it is impossible to draw an exact line marking the change from visitation to custody. *See Leaverton,* 417 S.W.2d at 85.

▊ With regard to Father's visitation rights, we note that the Guidelines are merely that—guidelines.[5] As noted in the State Bar Section Report:

> [T]hese guidelines should be merely advisory, providing a model for the courts with considerations of the particular circumstances of each case and giving the courts some flexibility in issuing visitation orders. Some consideration should be made for a possessory conservator who resides within a reasonable distance to the child and is interested in more than a weekend or holiday role in the child's life, including some visitation with the child during the second week. The courts may need to consider the age of the child, since recent studies suggest that very young children can suffer if removed for significant periods from the primary parent and that more frequent but shorter visitation periods may be beneficial to a young child.

Geary & Turner, *Standard Visitation Guidelines: A Dallas Point of View,* in 87–6 STATE BAR SECTION REPORT, FAMILY LAW at 26 (1987). After reviewing the record, with the best interest of the child in mind, we conclude that the trial court did not err or abuse its discretion by ordering a visitation schedule different from the Guidelines. From the record, we know that Mother previously had questioned the paternity of the child. Even assuming that Father does, in fact, suffer from anxiety attacks, it is undisputed that Father is a loving father and a good caretaker. Also, because Father was involved in the child's activities and appears competent to provide day-to-day care of the child and because Mother conceded that standard visitation would not give Father enough time to see the child and that the child needs time with Father, we conclude that the visitation schedule was not an abuse of discretion since the trial court attempted to incorporate these factors into the schedule. Moreover, it appears that Father's work schedule is flexible enough and Father lives close enough to accommodate the additional visitation, and the child is not yet burdened with the demands of

---

5. We recognize that under section 14.033(k) of the Texas Family Code, not in effect when this case was tried, there is a rebuttable presumption that the "standard order" provides reasonable *minimum* possession of a child for a parent named as a possessory conservator and that the order is in the best interest of the child. *See* TEX.FAM.CODE ANN. § 14.033(k) (Vernon Supp. 1990).

school and homework. Thus, we cannot say that the trial court abused its discretion. Accordingly, we overrule Mother's second and third points of error.

■ Even though Mother's complaint under point one is based solely on the visitation schedule imposed by the trial court, we must look not only to the possession and access schedule, but also to all of the duties imposed upon Mother and Father in resolving her assertion that the trial court, in effect, granted Father a "de facto" managing conservatorship. Granted, the right of visitation should not be extended to a point where it becomes a divided custody or the equivalent thereof. *Leithold*, 413 S.W.2d at 702 n. 1 (Norvell, J., dissenting). However, in the nature of things, the possessory conservator who removes the child and keeps it during a visit has an obligation to care for its immediate welfare and safety and must control the child so far as is necessary to fulfill his obligation. *Id.* But his authority and obligation are not equivalent to the authority and obligations of the one to whom the court has awarded custody. *Id.* The term "custody," or managing conservatorship, connotes, among other things, the right of the legal custodian to establish the legal domicile for the child, whereas such right does not abide with the parent who enjoys only the occasional right of visitation, *i.e.*, the right to visit the child wherever it is, at a certain time, or to have the child visit the parent for stipulated periods. *See id.* Custody embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes the right to the child's services and earnings, the right to direct the child's activities and make decisions regarding its care and control, education, health, and religion. *See id.*

■ Moreover, we do not find the *modification* cases cited by Mother to be persuasive authority in this case involving an original decree. The cases cited by Mother all involve *modification* of custody or visitation, rather than an original decree. There is a significant difference in the proof and procedures necessary to *modify* custody or visitation versus that which is necessary for such determinations in the original decree. When determining if a modification of possession of, or access to, a child is appropriate, the trial court may modify if the circumstances have materially and substantially changed or if the order has become unworkable or inappropriate. *See* TEX.FAM.CODE ANN. § 14.08(c)(3) (Vernon Supp.1990). When determining if a modification of custody is appropriate, the trial court may modify if the circumstances of the child, managing conservator, or possessory conservator have materially and substantially changed, retention of the present sole managing conservator would be injurious to the welfare of the child, and the appointment of a new managing conservator would be a positive improvement for the child. TEX.FAM.CODE ANN. § 14.08(c)(1) (Vernon Supp.1990). On the other hand, the best interest of the child is always the primary consideration in making the original determination of managing conservatorship, possession, and support and access to the child. *See* TEX.FAM.CODE ANN. § 14.07 (Vernon 1986).

In addition, the cases cited by Mother are factually distinguishable. For instance, in *Leaverton*, the only case from this Court, the father, residing in Texas, filed a motion to clarify visitation regarding his daughter, residing in Alabama, since the original decree merely stated that the father was awarded "reasonable visitation privileges." In his motion, the father requested that his daughter be allowed to visit him in Texas during the months of June and July of each year. The trial court determined that the daughter would spend two weeks in Texas with the father for the first year and, thereafter, four weeks in Texas with the father. The *Leaverton* case is distinguishable on several grounds. First, as explained by this Court, the father's motion was more than a mere request to clarify, rather, it was a motion to modify, which, as previously stated, requires more than proof that the modification is in the best interest of the child. Second, although the trial

court's order resulted in visitation with the father in Texas for only four weeks, or one-thirteenth of each year, the visitation would take place during an uninterrupted period of time outside of the state in which the daughter resided. Moreover, apparently no rapport existed between the father and daughter at the time, for reasons not stated in the opinion. In this case, unlike in *Leaverton*, there is evidence that Father is a loving and capable parent, which implies that a good rapport exists between Father and the child. Although the schedule of visitation in this case results in more time per year spent with Father than in *Leaverton*,[6] it does not give Father long periods of uninterrupted visitation. Further, it appears that Father's work schedule is flexible enough, and Father lives close enough, to accommodate the additional visitation.

Here, Mother's argument that Father was granted "de facto" managing conservatorship relies solely on the visitation schedule. As previously stated, the possessory conservator who removes the child and keeps it during a visit has an obligation to care for its immediate welfare and safety and must control the child so far as is necessary to fulfill his obligation. But the possessory conservator's authority and obligation are not equivalent to the authority and obligations of the one to whom the court has awarded custody. Contrary to Mother's assertions, a managing conservatorship entails much more than mere "available time" with the child, and because we have previously concluded that the trial court did not err in the structuring of Father's visitation and access schedule, we overrule Mother's first point of error.

Accordingly, we affirm the judgment of the trial court.

HOWELL, J., dissenting.

HOWELL, Justice, dissenting.

I dissent. The trial court's actions are transparent. It disagreed with the jury's verdict placing this child with its mother. It therefore wrote a visitation order so broad that it has reduced the award of custody into little more than a hollow technicality. We undermine the right of trial by jury when we allow the right of visitation to overpower the right of custody, as has happened here.

This case should be reversed and modified to include a proper visitation order. *See Dawson v. Garcia,* 666 S.W.2d 254, 264 (Tex.App.—Dallas 1984, no writ) (court of appeals has power to render judgment which it deems should have been rendered by trial court where it appears on face of record that modification in judgment should be made and justice requires it). Alternatively, the case should be reversed and remanded with instruction that further proceedings must occur in front of another judge.

---

**6.** For that matter, the Guidelines provide a larger percentage of time annually to the possessory conservator than the 1/13 of each year involved in the *Leaverton* case.