49 S.W.3d 380 (2000)
In the Interest of J.E.P. and S.M.P.
No. 2-99-402-CV.
Court of Appeals of Texas, Fort Worth.
October 12, 2000.
*381 Jeffrey H. Kobs, The Law Offices of Jeffrey H. Kobs, Fort Worth, for Appellant.
*382 Michener, Larimore, Swindle, Whitaker, Flowers, Sawyer, Reynolds & Chalk, L.L.P., James G. Reynolds, Fort Worth, for Appellee.
PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

OPINION
LEE ANN DAUPHINOT, Justice.

INTRODUCTION
Appellant C.M.P. (Father) appeals from the trial court's order modifying the terms and conditions of Appellee C.P.'s (Mother) possession of and access to their two minor children. Because we hold that the modifications do not amount to a de facto change of conservatorship, and because the trial court did not abuse its discretion in ordering the modifications, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Mother and Father were divorced in 1995. Under the divorce decree, the court appointed Father the sole managing conservator of the children, and appointed Mother the possessory conservator. Mother received the right to possession of J.E.P. and S.M.P. beginning at noon on the Wednesday following the first, third, and fifth Fridays of each month until 9:00 a.m. of the next first, third, or fifth Friday of each month, as well as 42 days of extended summer possession. Father received a superior right of possession of J.E.P. and S.M.P. beginning at 9:00 a.m. on the first, third, and fifth Fridays of each month, and continuing until noon the following Wednesday, as well as extended summer possession of 21 days. Therefore, in each fourteen-day period, Mother had possession of the children for eight days and 21 hours, and Father had possession for the remaining five days and three hours. Each parent had possession of the children for one weekend per fourteen-day period.
In 1996, Father filed a motion to modify the original decree, asking the court to substitute a standard possession order for the terms set out in the 1995 decree. Mother responded with a countermotion to modify, seeking to be appointed joint managing conservator, as well as to modify the possession and access ordered in the 1995 decree such that she would receive "primary possession" of the children. At the time of the hearing, J.E.P. was sixteen and S.M.P. was eleven. On October 1, 1999, the trial court entered an "Order Modifying Prior Order" (the "Order") that, while maintaining Father's status as sole managing conservator, awarded to Mother periods of possession of J.E.P. in nine-day blocks, beginning at 6:00 p.m. on the first, third, and fifth Fridays of each month and continuing until 6:00 p.m. nine days later. In addition, the Order granted Mother the exclusive right to determine where the children attend school, whether public or private.
Father's appeal from the Order centers around the fact that in modifying the terms of the previous possession order, the court denied him all weekend access to J.E.P. during the school year. Father also complains that the Order shortens his 21-day summer possession of J.E.P. to "any one weekend beginning at 6:00 p.m. Friday and ending at 6:00 p.m. Sunday."
In his first issue, Father argues that the Order, by awarding "substantially all possession of [J.E.P.] to [Mother]," constitutes a de facto change in conservatorship that is not supported by findings of fact or evidence. In issues two and three, Father argues in the alternative, challenging the legal and factual sufficiency of the evidence to support the court's findings. Finally, in his fourth issue, Father contends *383 that the trial court abused its discretion in specifying periods of possession such that Father, as sole managing conservator, received no weekend possession of J.E.P.

DISCUSSION

DE FACTO CHANGE OF CONSERVATORSHIP
As Father concedes, Mother's countermotion to modify sought not only her appointment as joint managing conservator, but also a modification of the possession and access ordered by the 1995 divorce decree. Section 156.301 of the family code sets forth the grounds under which a court can modify possession and access. That section provides, in relevant part:
The court may modify an order that sets the terms and conditions for possession of or access to a child or that prescribes the relative rights and duties of conservators if:
(1) the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the rendition of the order; [or]
(2) the order has become unworkable or inappropriate under existing circumstances.[1]
In this case, the trial court specifically found that the terms for possession set forth in the 1995 decree "ha[d] become unworkable under the existing circumstances for the minor children of the marriage," and thus proceeded to modify those terms. Father argues, however, that the nature of the modifications are such that they deprive him, as sole managing conservator, of "virtually all meaningful visitation." This, along with the shift in the right to control the children's education, Father contends, amounts to a de facto change in conservatorship, made without compliance with the more stringent requirements set forth in section 156.104 for a modification from a sole managing conservatorship to a joint managing conservatorship. That section provides:
(a) The court may modify an order that designates a sole managing conservator if a parent of the child requests appointment as a joint managing conservator and the court finds that:
(1) the circumstances of the child or the sole managing conservator have materially and substantially changed since the rendition of the order;
(2) retention of a sole managing conservatorship would be detrimental to the welfare of the child; and

(3) the appointment of the parent as joint managing conservator would be a positive improvement for and in the best interest of the child.[2]
In support of his argument, Father points to our decision in Dalton v. Doherty where we examined the issue of when an order that purports to modify only possession rights actually amounts to a de facto change in conservatorship in the absence of evidence to support such a change.[3] There, the original divorce decree appointed the father managing conservator and the mother possessory conservator, but gave each parent the right to have possession of the children "half the time."[4] Pursuant to the father's subsequent motion to modify the original decree in order to specify the mother's periods of possession, *384 the court, while retaining the mother's status as possessory conservator, ordered that she was to have possession of the older child on odd weekends and the younger child "at all times except even weekends of each month."[5] Accordingly, the father received possession of the younger child only during even weekends.[6]
On appeal by the father, we held that the order did not merely modify the mother's visitation rights; rather, it "effectively changed the managing conservatorship of the younger child from the father to the mother."[7] By granting the mother possession of the child at all times except even weekends, we reasoned, "the order operated to completely deprive the father of his function as managing conservator of the younger child."[8] We held, therefore, that the order constituted a de facto change in managing conservatorship of the younger child that was not supported by the evidence.[9]
The facts of the case now before us distinguish it from Dalton. The disparity between the possession rights granted to each parent in the original decree, and those rights as modified in the new order, which moved us in Dalton to hold that there was a de facto change of conservatorship, simply do not exist in the present case. Here, the Order increases Mother's possession of J.E.P., from eight days and 21 hours per fourteen-day period to nine days within each fourteen-day period, a difference of three hours. In addition, in this case, unlike Dalton, the possessory conservator (Mother) specifically moved for a modification of her possession rights so that she would receive more time with the children. Finally, the portion of the Order that modifies the parties' summer possession of the children actually tracks the language of a standard possession order as set forth in the family code, reducing Mother's extended summer possession to 30 days and allowing Father to elect two weekends during the summer during which an otherwise scheduled weekend period of possession by Mother will not occur and Father will have possession of the children.[10] In his motion to modify, Father specifically requested that the court "provide for possession and access ... as set forth in a standard possession order." As a result, Father cannot now be heard to complain about a portion of the court's order that did just that.
The crux of Father's complaint, moreover, is not that he has been given less time with J.E.P., but rather, that the Order grants periods of possession occurring when J.E.P. is in school and he is at work, and thus deprives him of all weekend access to the child. In Davis v. Davis, the court considered and rejected a similar claim by a mother who complained that the trial court's grant of "visitation" to the father during "the majority of the child's waking time when he is not in daycare" amounted to a change in the managing conservatorship of the child, and was therefore in contradiction of a jury verdict appointing her sole managing conservator.[11] Affirming the trial court's judgment, the court stated that in resolving a dispute about whether a court's grant of possession rights amounts to a de facto *385 change of conservatorship, we must look to all of the duties imposed upon mother and father, not just the possession and access schedules.[12] The court pointed out that "a managing conservatorship entails much more than mere `available time' with the child."[13] Similarly, Father, by arguing that a lack of weekend possession is tantamount to a de facto change of conservatorship, fails to recognize the host of exclusive rights and duties that he retains as sole managing conservator. These exclusive rights include the exclusive right to establish the child's primary residence, to consent to medical treatment involving invasive procedures, to represent the child in legal action and make other legal decisions on the child's behalf, and the right to receive child support payments.[14]
Notably, the rights granted exclusively to a sole managing conservator under section 153.132 do not include the right to have periods of possession in excess of those granted to the possessory conservator, nor do they include the right to weekend possession of the child. While a managing conservator must necessarily enjoy sufficient access to and possession of the child to enable him to fully realize his rights and perform his duties, Father has made no allegation here that a Monday through Friday schedule deprives him of this opportunity. Further, while Father refers to the "rights of possession normally associated with a sole managing conservator," it must be remembered that a court is given discretion to deviate from standard possession terms, which provide only for "reasonable minimum possession of a child for a parent named as a possessory conservator," if it determines that an application of the standard order would be unworkable or inappropriate under the circumstances.[15] Most important is the trial court's determination of what arrangement is in the best interest of the child.[16]
We hold that the trial court, by its order modifying the terms of Mother's possession of J.E.P. did not so eviscerate the rights of Father as sole managing conservator that it effectively changed the conservatorship of the child. The only exclusive right previously held by Father that the court granted to Mother in the Order was the "exclusive right to determine where the parties' two minor children attend school whether public or private." In view of the fact that the family code gives courts the discretion to limit the rights ordinarily held by a sole managing conservator and to expressly grant rights to the possessory conservator, we hold that this change alone is not the sort of drastic modification of the functions of the sole managing conservator that would create a de facto change in conservatorship.[17] Contrary to Father's assertion that he has been "effectively deprived ... of any meaningful function as managing conservator," he retains all of the other rights granted to him in the original decree and set out in section 153.132, rights that are the very essence of the "function" of a sole managing conservator. Because the court's modifications under section 156.301 do not so erode Father's rights as sole managing conservator as to amount to a de *386 facto change in conservatorship, we overrule Father's first issue.

SUFFICIENCY OF THE EVIDENCE AND ABUSE OF DISCRETION
Father's remaining issues focus on whether the evidence is factually and legally sufficient to support the trial court's findings in this case, and whether the court abused its discretion in specifying periods of possession by which Father received virtually no weekend possession.
The trial court made the following pertinent findings and conclusions:
....
(5) The Court finds that the Order to be modified has become unworkable under the existing circumstances for the minor children of the marriage.
(6) The Court finds that it is in the children's best interest that the prior orders regarding possession and access and the rights and duties of the conservators be modified as set out in the Court's ruling of October 1, 1999.
....
The best interest of the child shall always be the court's primary consideration in determining the issues of conservatorship, possession, and access to the child.[18] Generally, the trial court is given wide latitude in determining the best interest of a minor child, and its judgment will not be disturbed on appeal unless the record as a whole shows that the trial court abused its discretion.[19]
Under an abuse of discretion standard, legal and factual insufficiencies are not independent grounds for asserting error, but are, rather, relevant factors in assessing whether the trial court abused its discretion.[20] A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules or principles.[21] There is generally no abuse of discretion when there is some evidence to support the trial court's finding on an issue of fact.[22] The fact that an appellate court might decide a matter differently does not establish an abuse of discretion when the matter was one solely within the trial court's discretionary authority.[23] An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence.[24]
Because we have held that the Order was not a de facto change of conservatorship, we analyze Father's abuse of discretion complaint under section 156.301, which allows a court to modify an order that sets the terms and conditions for possession of or access to a child or that prescribes the relative rights and duties of conservators if the court finds that the order has become "unworkable or inappropriate under existing circumstances."[25]
*387 Contrary to Father's assertion that in order to modify possession and access, the court must find that there has been a material and substantial change in circumstances since the date of the rendition of the order, a change in circumstances is merely one of five alternative bases upon which a court may modify a prior order under section 156.301.[26]
In the instant case, we simply cannot say that the trial court abused its discretion in modifying the 1995 decree. The evidence, including the testimony of both parents, as well as the judge's inchamber interviews with the children, is certainly sufficient to support the court's finding that the prior order had become unworkable and inappropriate. While the parties may proffer different reasons for the current state of affairs or assign varying degrees of blame for the situation, it is clear that the trial judge acted well within his discretion in finding that a modified order was warranted. Similarly, the evidence, especially the testimony of the children, is ample to support the court's conclusion that the modification set out in the order is in the children's best interests. In determining whether a modification of possession and access is in the best interest of a child, the court may consider the age, developmental status, circumstances, and needs of the child, the circumstances of the managing and possessory conservators, and any other relevant factor.[27]
Accordingly, we hold that the trial court did not act arbitrarily or unreasonably in modifying the terms of the original decree relating to the access to and possession of J.E.P. Rather, faced with considerable evidence concerning the current circumstances of the parties, the trial court found the prior order to be inappropriate and unworkable, based upon guidelines set forth in the family code. We therefore overrule Father's remaining issues.

CONCLUSION
Having overruled all of Father's issues on appeal, we affirm the judgment of the trial court.
NOTES
[1] Tex.Fam.Code Ann. § 156.301 (Vernon Supp. 2000) (emphasis added).
[2] Id. § 156.104 (Vernon 1996) (emphasis added).
[3] See Dalton v. Doherty, 670 S.W.2d 422, 424 (Tex.App.-Fort Worth 1984, no writ).
[4] Id. at 423.
[5] Id. (emphasis added).
[6] See id.
[7] Id. at 424.
[8] Id. (citation omitted).
[9] Id.
[10] See Tex.Fam.Code Ann. § 153.312 (Vernon Supp.2000).
[11] Davis v. Davis, 794 S.W.2d 930, 934 (Tex. App.-Dallas 1990, no writ).
[12] See id. at 936.
[13] Id. at 937.
[14] See Tex.Fam.Code Ann. § 153.132 (Vernon 1996).
[15] Id. § 153.252 (emphasis added); see also id. §§ 153.251, 153.253; In re Doe, 917 S.W.2d 139, 143 (Tex.App.-Amarillo 1996, writ denied); Welsh v. Welsh, 905 S.W.2d 615, 619 (Tex.App.-Houston [14th Dist.] 1995, writ denied).
[16] See Tex.Fam.Code Ann. § 153.002.
[17] See id. §§ 153.132, 153.192.
[18] See Tex.Fam.Code Ann. § 153.002; Roosth v. Roosth, 889 S.W.2d 445, 451 (Tex.App.-Houston [14th Dist.] 1994, writ denied).
[19] See Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982); Halamka v. Halamka, 799 S.W.2d 351, 355 (Tex.App.-Texarkana 1990, no writ).
[20] See Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex.1991); D.R. v. J.A.R., 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied).
[21] See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
[22] See Roa v. Roa, 970 S.W.2d 163, 165 (Tex. App.-Fort Worth 1998, no pet.).
[23] See Downer, 701 S.W.2d at 242.
[24] See D.R., 894 S.W.2d at 95.
[25] Tex.Fam.Code Ann. § 156.301(2).
[26] See id. § 156.301.
[27] See Tex.Fam.Code Ann. §§ 156.302, 153.256 (emphasis added).