**AFFIRM and Opinion Filed December 27, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01244-CV

### IN THE INTEREST OF C.J., A CHILD

**On Appeal from the 233rd District Court**
**Tarrant County, Texas[1]**
**Trial Court Cause No. 233-416160-07**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Whitehill, and Justice Schenck
Opinion by Chief Justice Burns

In this grandparent-access suit, the trial court issued an order granting paternal grandparents ("Grandparents") possession and access to their minor grandchild, C.J. Mother contends the trial court erred by granting Grandparents possession and access, having already found that Mother and Father's joint managing conservatorship was in C.J.'s best interest. For the reasons expressed below, we affirm.

### BACKGROUND

Mother and Father were joint managing conservators of C.J., with Father having primary custody. When Father and C.J.'s older brother ("Brother") got into a physical altercation, C.J. moved in with Grandparents. Father was later convicted of his fourth driving while intoxicated offense and sentenced to three years' imprisonment.

---

[1] Although originally filed in the Second Court of Appeals, this appeal was transferred to this Court pursuant to a Texas Supreme Court docket equalization order. TEX. GOV'T CODE § 73.001.

After Father went to prison, Grandparents filed a petition to modify the parent-child relationship ("SAPCR") seeking joint managing conservatorship with Mother and primary custody. In response, Mother filed a counter-petition also seeking primary custody and a motion to dismiss for lack of jurisdiction. The trial court granted Mother's motion to dismiss and issued an order giving Mother primary custody.

About eight months later, Grandparents filed another SAPCR, this time seeking possession and access. After a bench trial, the trial court issued an order granting Grandparents possession and access "during the period that [Father] is incarcerated." Mother appeals the trial court's order.

## STANDARD OF REVIEW

We review a trial court's decision to grant a grandparent possession and access for an abuse of discretion. *In re Chambless*, 257 S.W.3d 698, 700 (Tex. 2008) (orig. proceeding) (per curiam). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or legal principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). In family law cases, the abuse of discretion standard overlaps with traditional sufficiency standards of review. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth, no pet.). As a result, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. *Id.* To determine whether a trial court abused its discretion, we consider whether some evidence exists to support the trial court's decision. *In re W.M.*, 172 S.W.3d 718, 729 (Tex. App.—Fort Worth 2005, no pet.).

## DISCUSSION

In her only issue, Mother contends the trial court erred by awarding Grandparents possession and access to C.J. because (1) the evidence was legally and factually insufficient; (2) the order failed to include the required findings set out in family code section 153.433(b); (3) an

implied finding of no significant impairment automatically precluded Grandparents from a right to possession and access; and (4) Grandparents lacked standing. Because standing implicates subject matter jurisdiction, we address it first. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).

**Standing[2]**

"[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). In limited circumstances, the State may interfere with this right by granting a grandparent possession and access to a grandchild. TEX. FAM. CODE §§ 153.432–.433.

To petition a court for possession and access, a grandparent must have standing. Standing is a component of subject matter jurisdiction and a constitutional prerequisite to maintain suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The family code identifies persons who have standing to file a SAPCR, and the party seeking relief must plead and establish standing within the parameters of the code's language. *In re E.C.*, No. 02-13-00413-CV, 2014 WL 3891641, at *2 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.). As a question of law, we review standing de novo. *Id*. at *1.

Mother contends that family code sections 102.003 and 102.004 govern standing in this appeal, but those sections govern standing to seek conservatorship of a child, not possession and access. TEX. FAM. CODE §§ 102.003–.004. "Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153." TEX. FAM. CODE § 102.004(c).

Section 153.432 confers standing on a "biological or adoptive grandparent" to file a suit requesting possession or access to a grandchild. TEX. FAM. CODE § 153.432(a). Here, the record

---

[2] In her opening brief to this Court, Mother challenges Grandparents' right to managing or possessory conservatorship of C.J. However, we observe that Mother appeals the order granting Grandparents possession and access, not managing or possessory conservatorship.

reflects that Grandparents are C.J.'s paternal grandparents. Moreover, in her opening brief to this Court, Mother concedes Grandparents' standing under this section. Nonetheless, Mother argues the trial court's order cannot be upheld because Grandparents failed to allege that Mother or Father met any of section 153.433(b)'s requirements. That section, however, does not govern standing; it identifies the conditions under which possession and access will be granted. *In re Clay*, No. 02-18-00404-CV, 2019 WL 545722, at *6 (Tex. App.—Fort Worth Feb. 12, 2019, orig. proceeding). Although a successful suit requesting possession and access may require a grandparent to satisfy section 153.433, "whether the grandparent ultimately will succeed is a different question than whether the grandparent has the right to simply bring suit." *In re Smith*, 260 S.W.3d 568, 573 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Because the record conclusively establishes that Grandparents are C.J's biological grandparents, we conclude they have standing to seek possession and access.

### Sufficiency of the Evidence

Next, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's award of possession and access to Grandparents. Section 153.433(a)(2) requires a grandparent seeking possession and access to "overcome[] the presumption that a parent acts in the [child's best interest] by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being." TEX. FAM. CODE § 153.433(a)(2). A trial court abuses its discretion when it grants possession and access to a grandparent who has not met this standard. *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (orig. proceeding) (per curiam).

Here, the record reflects that C.J. lived with Father at Father's home. Because they lived only a few blocks away from Grandparents, Grandparents saw C.J. almost every day. They helped C.J. with his homework, took him to extracurricular events, and made several overnight fishing

trips. In an affidavit to the trial court, Grandparents stated their bond with C.J. "ha[d] only grown stronger over the years, especially since [Mother] became much less involved in [CJ's] life."

Brother also lived at Father's home. Because Brother drank alcohol and smoked marijuana, he became physically aggressive with Father. After Father and Brother got into a physical altercation, Brother called Mother and asked if he could go to her house. Mother refused to allow Brother in her home, and she also refused to pick up C.J. As a result, Grandparents took C.J. to their home where he continued to reside until Father went to prison.

After Father went to prison, the trial court awarded Mother primary custody. When C.J. moved in with Mother, the evidence shows Mother interfered with C.J. and Grandparents' relationship. Specifically, Mother banned C.J. from having any contact with Grandparents, and Grandparents' phone records also showed that Mother would punish C.J. if he mentioned or attempted to contact them:

> [Grandparents]: Did you call?
> [C.J.]: Ya . . Ima just text I kept getting paranoid
> [Grandparents]: Ok that's better anyway
> [C.J.]: So she tried to take my phone away and I refused and said I don't love her or wanna live here so then she got mad and . . . she also brought up her lawyer in taking my phone away.
>
> **********
>
> [C.J.]: Got in trouble
> [Grandparents]: At school? What did u do
> [C.J.]: No at home was talking bout yall and I cussed her out
> [Grandparents]: Sorry but thanks for sticking up for us
> [C.J.]: But don't come on Saturday cuz my mom yells at me . . . She yells at me for talking to u
> [Grandparents]: Does she say why you can't talk to me?
> [C.J.]: Yah she said why do they always get in my life why are u talking to them . . . Can u plz win the court

Moreover, in a letter to the trial court, C.J. wrote:

> I hate being at my moms house I just wish she could just leave my life because of her my childhood is ruined I hate her and her house there is always yelling I cant hang out with my friends she pushes me . . . I hate it there I just want to live with

my dad . . . please use all your power not to let me live with my mom please I cant even fall asleep without crying myself to sleep and thinking about running away I just cant stand it please dont let me stay there. I cant even talk to my dad without her yelling at me . . . please help me.

In another letter, C.J. wrote:

I cant talk to my dad or grandpa without her yelling at me and threatening me by taking away my mixed martial arts training and my xbox just for talking to my dad I cry every day and if she sees me crying she keeps yelling . . . I beg you with everything that it is worth in this world to not let me live with my mom.

At trial, C.J. testified that he once sat in a car for forty-five minutes refusing to go to Mother's house because he was "tired" of her. C.J. also testified he told his school counselor he wanted to run away from Mother's house to live with Grandparents. When asked how he would feel if not allowed to see Grandparents, C.J. responded that he would "feel broken."

Similarly, C.J.'s social worker also testified that living with Mother frustrated C.J. The social worker observed that C.J. was not well-regulated emotionally, agitated easily, and easily became upset. C.J.'s emotional instability was also demonstrated by the fact that, during his transition back to Mother's home, he got into a fight and was suspended from school. To help C.J. adjust to Mother's home, the social worker recommended that C.J. needed a calmer environment and "the options [to] . . . see . . . [G]randparents." Nonetheless, the social worker did not believe that denying Grandparents possession and access would significantly impair C.J.'s physical health or emotional well-being.

Mother testified about her concerns in awarding Grandparents possession and access. Specifically, because Grandparents were more lenient, Mother believed that granting them possession and access would impair her ability to discipline C.J. Moreover, in an affidavit to the trial court, Mother explained that Grandparents had poor health. Grandfather was diagnosed with cancer, and Grandmother had multiple medical issues as well. In addition, Grandparents also cared

for their disabled daughter. Mother expressed concern that Grandparents did not have the "physical ability and time to care for [C.J.]."

On cross-examination, Mother acknowledged that she allowed C.J. to have contact with his maternal grandparents. Mother testified that when C.J's maternal grandmother visited from Mexico, C.J. spent time with her. Notwithstanding C.J.'s relationship with his maternal grandparents, Mother maintained it was not in C.J.'s best interest to have the "consistency of seeing [Grandparents]."

Conflicting evidence existed at trial as to whether denying Grandparents possession and access to C.J. would significantly impair C.J.'s physical health or emotional well-being. But an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence. *In re J.E.P.*, 49 S.W.3d 380, 386 (Tex. App.—Fort Worth 2000, no pet.). As the sole judge of the witnesses' credibility, any conflicts in the testimony were within the province of the trial court to resolve, and we must defer to those findings. *In re D.T.*, No. 05-17-1224-CV, 2019 WL 1109697, at *6 (Tex. App.—Dallas Mar. 11, 2019, no pet.). Based on these facts, we conclude the trial court could have found by a preponderance of the evidence that denying Grandparents possession and access to C.J. would significantly impair C.J.'s physical or emotional well-being.

### Sufficiency of the Order

Next, Mother argues the trial court's order was insufficient because it failed to include section 153.433(b)'s required findings.[3] When a court awards a grandparent possession and access, the order must state with specificity that:

   (1) at the time the relief was requested, at least one biological or adoptive parent of the child had not had that parent's parental rights terminated;

---

[3] Specifically, in Mother's briefing, she contends that "[b]ecause the Court's order fails to state any such finding, [Grandparents] cannot rely upon section 153.432." As stated above, section 153.432 governs a grandparent's standing to seek possession and access to a grandchild. Thus, to the extent Mother is again making a standing argument, we have already determined that Grandparents had standing to seek possession and access to C.J.

(2) the grandparent requesting possession of or access to the child has overcome the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that the denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and

(3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
    (A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;
    (B) has been found by a court to be incompetent;
    (C) is dead; or
    (D) does not have actual or court-ordered possession of or access to the child.

TEX. FAM. CODE § 153.433(b).

Here, the trial court's order specifically stated that (1) at least one biological parent's rights had not been terminated, (2) denying Grandparents possession and access would significantly impair C.J.'s physical health or emotional well-being, (3) Father was currently incarcerated, where he would remain for a minimum of six months, and (4) granting Grandparents possession and access was in C.J.'s best interest. We therefore conclude the order met section 153.433(b)'s requirements.

### Implied Finding of No Significant Impairment

Lastly, Mother argues the trial court's appointment of Mother and Father as joint managing conservators implies a finding of no significant impairment, and thus automatically precludes Grandparents' possession and access. Our review of the record, however, belies Mother's contention. The trial court's order and findings of fact and conclusions of law both included express significant impairment findings. Moreover, we have found no legal authority suggesting that appointment of both parents as joint managing conservators automatically precludes a grandparent from a right to possession and access. Mother cites three cases for this proposition, but in each of these cases, the grandparents failed to prove significant impairment. *See In re Derzapf*, 219 S.W.3d at 333–34; *In re Scheller*, 325 S.W.3d 640, 643–44 (Tex. 2010) (per curiam);

*In re J.P.C.*, 261 S.W.3d 334, 340 (Tex. App.—Fort Worth 2008, no pet.). Nowhere in these cases do the courts state that a grandparent is precluded from a right to possession and access if both parents are joint managing conservators.

Having determined the trial court expressly found that denying Grandparents possession and access to C.J. would significantly impair C.J.'s physical health or emotional well-being and having earlier determined that sufficient evidence supports such finding, we conclude that Mother and Father's status as joint managing conservators did not negate Grandparents' possession and access.

## CONCLUSION

Having decided all of Mother's arguments against her, we conclude the trial court did not abuse its discretion by awarding Grandparents possession and access to C.J. Accordingly, we affirm the trial court's order.

/Robert D.Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

181244F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.J., A CHILD

No. 05-18-01244-CV

On Appeal from the 233rd District Court, Tarrant County, Texas
Trial Court Cause No. 233-416160-07.
Opinion delivered by Chief Justice Burns. Justices Whitehill and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees recover their costs of this appeal from appellant.

Judgment entered December 27, 2019