

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00135-CV

---

**IN THE INTEREST OF H.M., A CHILD**

---

On Appeal from the 231st District Court
Tarrant County, Texas[1]
Trial Court No. 231-663945-19, Honorable Jesus Nevarez, Presiding

---

October 20, 2025

## MEMORANDUM OPINION

### Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, paternal Grandmother, appeals the trial court's order modifying the parent-child relationship.[2] In her sole issue, Grandmother contends that the trial court abused its discretion by modifying the original order which removed her as a possessory conservator, terminated her rights and duties, and eliminated her periods of possession and access. We affirm the trial court's modification order.

---

[1] This cause was originally filed in the Second Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] To protect the privacy of the parties involved, we refer to the appellant paternal grandmother as "Grandmother," the appellees as "Mother" and "Father," and the child as "H.M." *See* TEX. FAM. CODE § 109.002(d).

BACKGROUND

In February of 2022, the trial court signed an original suit affecting parent-child relationship order that appointed Mother and Father joint managing conservators of their three-year-old daughter, H.M., and Grandmother as possessory conservator. Grandmother was awarded possession of H.M. on the first, third, and fifth Friday of each month from 6:00 p.m. until 9:00 a.m. the following Sunday. Father had possession following Grandmother, from 9:00 a.m. until 6:00 p.m. on each Sunday following the first, third, and fifth Friday of each month and a modified Thursday and holiday schedule. All of Father's possession was to be supervised by a person agreed to by Father and Grandmother. In August of 2023, Mother filed her petition to modify possession and access requesting that Father be awarded an expanded standard possession schedule. She also requested that Grandmother be removed as a possessory conservator and her access and possession and rights and duties as to H.M. terminated. Father, acting pro se, filed a general denial. The suit was tried to the bench on September 25, 2024. At trial, Father stated his agreement with Mother's proposed modification. After hearing testimony from Mother and Grandmother, the trial court entered an order that modified the prior order by terminating Grandmother's possessory conservatorship and attendant rights and duties and gave Father a standard possession schedule. Grandmother timely filed this appeal.

## APPLICABLE LAW

A trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession. *In re A.M.,* 604 S.W.3d 192, 196 (Tex. App.—Amarillo 2020, pet. denied). Accordingly, we review a decision to modify

conservatorship and possession of or access to the child for an abuse of discretion. *In re T.D.C.,* 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g). A trial court may modify an order establishing conservatorship or possession and access if modification would be in the best interest of the child and the circumstances of the child, a conservator, or another party affected by the order have materially and substantially changed since the date of the rendition of the prior order. TEX. FAM. CODE § 156.101(a)(1)(A).[3] We will not disturb a trial court's decision in a modification case unless the complaining party shows a clear abuse of discretion, meaning the trial court acted in an arbitrary and unreasonable manner or without reference to guiding principles. *Iliff v. Iliff,* 339 S.W.3d 74, 78 (Tex. 2011). In our review of a modification order under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *In re J.E.P*, 49 S.W.3d 380, 386 (Tex. App.—Fort Worth 2000, no pet.). An appellate court applies a two-prong analysis when it determines whether legal or factual insufficiency has resulted in an abuse of discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. *In re C.F.,* 576 S.W.3d 761, 773 (Tex. App.—Fort Worth 2019, no pet.). The sufficiency review is related to the first inquiry. If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision, and that involves a conclusion that the trial court's decision was neither arbitrary nor unreasonable. *Id.* The trial court's

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

3

exercise of discretion will withstand appellate scrutiny unless clearly abused. *In re A.D.T.,* 588 S.W.3d 312, 319 (Tex. App.—Amarillo 2019, no pet.).

Because of the fact-intensive nature of reviewing custody issues, an appellate court must afford great deference to the factfinder on issues of credibility and demeanor because the child's and parents' behavior, experiences, and circumstances are conveyed through words, emotions, and facial expressions that are not reflected in the record. *Chavez v. Chavez,* 148 S.W.3d 449, 458 (Tex. App.—El Paso 2004, no pet).

In determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration. § 153.002(a). We review a trial court's best-interest finding by using the well-established *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4]

## ANALYSIS

In her sole issue, Grandmother contends that the trial court abused its discretion in modifying the prior order because there is legally and factually insufficient evidence of a material and substantial change in circumstances or best interest. Grandmother also challenges various aspects of the modification order, including whether any change in circumstances was contemplated, whether the modification was connected to her rights and possession, and whether Father requested that he be given Grandmother's

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.* In the context of a custody modification, other factors to consider include the child's need for stability and the need to prevent constant litigation. *In re V.L.K.,* 24 S.W.3d 338, 343 (Tex. 2000).

4

possession. We discuss Grandmother's arguments in turn and conclude that the trial court was within its discretion in making the modifications requested.

Circumstances at the Time of the 2022 Order

The evidence sufficiently shows the circumstances of H.M., Mother, Father, and Grandmother, at the time of the 2022 order, our starting point. The trial court heard testimony that there was a no-contact order between Mother and Father due to Father's pending criminal case. Father was unemployed, and had limited, supervised visitation with H.M. Grandmother was appointed a possessory conservator and determined who would supervise Father's possession. Grandmother was given specified rights and duties, such as the right of access to medical and school records, and to take H.M. to the doctor in the event of an emergency. She was awarded visitation on the first, third, and fifth weekends. Father and Mother had "very minimal communication," and Mother described their relationship at the time as "hostile." H.M. was three years old and had not begun school.

Evidence of a Material and Substantial Change in Circumstances

At the time of trial, Father's criminal charges were resolved, and he was employed by State Farm. Mother testified that H.M. was now five years old, attending kindergarten, and Father had been exercising unsupervised visitation with H.M. since Father's Day. Mother allowed Father to take H.M. to school and have weekday visitation when he requested it. One of the most significant changes was the drastic improvement in Mother's and Father's relationship and their improved communication skills. These changes impacted H.M., Mother, and Father. According to Mother, her and Father's

5

relationship is currently "healthy." They are able to schedule visitation in a mutual and respectful way. Mother sees the relationship that H.M. now has with Father: "[H.M.'s] happy, and whenever she comes back, she's grounded. So I feel very comfortable sending her off with him during his times when he comes to pick her up . . . ." Father and Mother are able to discuss H.M.'s health and doctor visits. Mother and Father have a cordial relationship and have put behind them the problems they had when the 2022 order was entered. "It's the best co-parenting [Mother] could have imagined." Moreover, it is beneficial to H.M. to see her parents collaborating and working together. The relationship between Father and H.M. has "blossomed" this past year.

Other significant changes were evident in the relationship between Grandmother, Father, and Mother. Grandmother testified that she did not believe either parent was fit to raise H.M. She is opposed to Father having a standard visitation schedule because he is "hostile" and "volatile," and H.M. does not need to be alone with him. Grandmother described her relationship with Father as "toxic" and admitted that she has not supervised Father's visitation "in a long time."

Mother pointed to H.M.'s doctor visits and school-related issues as an indication that a change in Grandmother's status and rights was warranted. Mother testified that Mother, Mother's husband, Father, and Grandmother attend H.M.'s doctor visits. According to Mother, Grandmother asks too many questions and "it just takes away from the parental questions that we have." Mother also cited a difference in opinion between her and Grandmother concerning H.M.'s need for oral surgery. On one occasion, during Grandmother's visitation with H.M., Grandmother took H.M. to an urgent care facility because H.M. had injured her toe. Mother thought it would be traumatizing to H.M. for

6

Mother to show up at the urgent care because she would have to leave without H.M. since it was during Grandmother's visitation. Mother testified that Grandmother does not need access to H.M.'s medical records because "that's too much power" for a grandparent to have when there are two parents involved who are fully capable of making medical decisions. Grandmother testified that her access to medical records is "the only way that [she] know[s] anything's going on." Mother also mentioned the interaction when H.M. arrives at school. Mother prefers for H.M. to walk into the classroom on her own, while Grandmother "holds" H.M. and goes to her desk with her. Mother describes Grandmother as "overly involved." According to Mother, this interaction affects H.M.'s independence. Further, Mother complained that Grandmother is excessive in her text communication to the point of being "overbearing." Before H.M. started school, Grandmother would contact Mother by text messaging twice a day, "just to check on her." In Mother's view, Grandmother is becoming a "helicopter parent" who is overly involved with raising H.M.

Mother testified that she was asking the judge to remove Grandmother as a possessory conservator and return the parents to a "normal" parent-child relationship because "[she] and [Father] are almost thirty years old, and [they] are very capable of raising [H.M.] by [themselves]. [Mother doesn't] need to be monitored by [Grandmother]."

Best Interest

The trial court heard evidence that H.M. benefitted emotionally by spending more time with Father. Mother testified to a positive difference in H.M. because of Father's increased and unsupervised possession and access. H.M. is happy to see Father, and when he returns her, she is "grounded." H.M. is "more confident." Mother testified that it was in H.M.'s best interest to have one-on-one time with Father and that there was no

7

need for supervision going forward because she has seen how H.M. and Father interact with each other. H.M. is more talkative and happier when she sees Mother and Father communicating. Father has demonstrated consistency in picking up H.M. for school or after school and returning her timely to transition to her bedtime routine at Mother's home. Mother testified that it is better for H.M. to have both parents participating in raising H.M. Mother and Father have resolved their differences and are working collaboratively to discuss H.M.'s educational and medical needs. These changes provide a foundation to ensure H.M.'s future emotional health and stability. The trial court also heard evidence of the deterioration in the relationship between Father and Grandmother and the friction that existed because of Grandmother's specified rights to attend medical appointments and school activities. This evidence supported a change to Grandmother's continued involvement as a conservator with specific periods of possession and as the person responsible for approving Father's visitation supervisors because it suggested that her court-appointed role was no longer proper or appropriate.

Deferring to the trial court's assessment of the credibility and weight of the evidence, we conclude that the record includes sufficient evidence from which the trial court could have reasonably concluded a material and substantial change of circumstances had occurred since the 2022 order, and that the modification was in the best interest of H.M. *See* § 156.101(a)(1); *Holley*, 544 S.W.2d at 371–72.

Other Challenges to the Modification Order

Grandmother lodges three additional complaints concerning the modification order. We first address Grandmother's contention that even if a change in circumstances exists, that change was contemplated at the time of the 2022 order. In her opening

statement, Mother's counsel reminded the judge that at the time of his 2022 ruling, he told the parents, "Well, y'all get your things together and y'all can come back in a few years and we'll see about just letting you guys raise the child." According to Grandmother, since Mother and Father were not fit parents at the time of the 2022 order, they are precluded from "improving their lives or ability to parent [H.M.]" because that change was contemplated at the time of the prior proceeding. When a change in circumstance is anticipated and factored into the original decree, the eventuality of the change does not constitute a material and substantial change of circumstances. *Smith v. Karanja*, 546 S.W.3d 734, 740–42 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (trial court erred by modifying conservatorship terms of decree because need to renew daughter's passport was circumstance already contemplated at time of divorce). We do not interpret the trial court's statements here to prevent a future modification. There is no possession plan in the 2022 order by which Father could eventually have unsupervised possession, and it does not take into account H.M.'s increased age or any corresponding change in the relationship between Father and H.M.

Next, Grandmother argues that any change in circumstances was unconnected to her rights and possession. We disagree. In addition to testimony outlined in our analysis above, the trial court heard testimony that Mother and Father had matured and were able to put aside their previous animosity. They were communicating and making shared decisions as H.M.'s joint managing conservators. In stark contrast, Grandmother described her relationship with Father as toxic and maintained that both Mother and Father were unfit. It has been more than a year since Grandmother supervised Father's possession. This testimony supports the trial court's exercise of discretion in modifying Grandmother's rights and possession. Appellate courts give wide latitude to trial courts'

9

determinations on possession and visitation issues.  *See In re S.A.H.*, 420 S.W.3d 911, 930 n.31 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).  We defer to the trial court, which was in the best position to evaluate the testimony of Mother and Grandmother.

Grandmother next challenges the possession order awarded to Father because he did not have any request for affirmative relief on file.  She contends that "no one asked that Father's possession be unsupervised" and his possession take the place of Grandmother's possession.  According to Grandmother, Mother did not have standing to request any relief on Father's behalf, citing to *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 92 (Tex. 1973) and *In re T.N.*, 142 S.W.3d 522, 524–25 (Tex. App.—Fort Worth 2004, no pet.).  *Jackson* and *In re T.N.* enunciate the well-established proposition that an appealing party may not complain of errors that do not injuriously affect her or that merely affect the rights of others.  As a parent and the joint managing conservator with the right to designate the primary residence of H.M., Mother had standing to bring the modification suit.  *See* §§ 102.003, 156.101(a).  Further, Mother's and Father's interests were aligned, and Father announced his agreement to Mother's requested relief.  The modification suit did not solely benefit Father.  To the contrary, the requested modification affected H.M.'s ability to spend more quality time with Father, and Mother and Father could raise H.M. without Grandmother's interference or oversight.  As to Grandmother's contention that there was no request for unsupervised possession, it is without merit.  We note that Mother's pleading requested that Father be awarded an "Expanded Standard Possession" schedule.  A standard possession order is presumed to provide reasonable minimum possession of a child for a parent named as a possessory or joint managing conservator and is in the best interest of the child.  *See* § 153.252.  A standard possession

order does not inherently require parental supervision during possession unless specific circumstances warrant such restrictions, as deviations from the standard possession order must be justified by evidence showing that the standard terms are not in the child's best interest.  *See* § 153.193.

## CONCLUSION

Having considered the record before us and affording the deference to be given to the trial court's resolution of underlying facts and credibility determinations that may have affected its decision, we hold that the trial court acted within its discretion by modifying the conservatorship, terms and conditions, and possession and access provisions of the 2022 order.  We overrule Grandmother's appellate issues and affirm the judgment of the trial court.

Judy C. Parker
Justice