David Patterson FAIR, Appellant,

v.

Gretta Fair DAVIS, Appellee.

No. 05-88-01503-CV.

Court of Appeals of Texas, Dallas.

Feb. 14, 1990.

J.W. Tyner, Sam B. Cobb, Jr., Mike A. Hatchell, Tyler, for appellant.

D. Bradley Dickinson, W. Bruce Monning, Dallas, R.B. Pool, Terrell, for appellee.

Before McCLUNG, THOMAS and WHITTINGTON, JJ.

## OPINION

THOMAS, Justice.

David Patterson Fair (Father) appeals from an adverse judgment denying his motion to reduce child support and granting a motion to modify the terms and conditions of his periods of visitation. In five points of error, Father contends that: (a) the trial court erred in the instructions to the jury on the child support issue; (b) the evidence is legally and factually insufficient to support the jury's finding that the visitation periods should be modified; and (c) the trial court abused its discretion in eliminating mid-week visitation. For the reasons set forth below, we overrule all points and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Father and Gretta Fair Davis (Mother) were divorced by the entry of a Final Decree dated April 13, 1984. The decree of divorce divided the community estate and the debts of the parties, provided for the conservatorship and support of the two minor children, and set forth specified periods of visitation. An appeal was filed from that order and in settlement of the appeal, the parties entered into an Agreed Order on September 24, 1984. Under the terms of the September 1984 order, Father's visitation periods were expanded to include, among other times, the right to have the children each Wednesday evening. Father's child support obligation remained at $750 per month per child with the further requirement that he maintain hospitalization and health insurance coverage on each of the children. The parties engaged in additional litigation in 1985 and 1986 which was the subject of another appeal. In the spring of 1986, Mother filed a motion to modify that portion of the Agreed Order which provided for mid-week visitation. Thereafter, Father filed a motion to modify the support provisions. The motions to modify were tried to a jury resulting in a favorable verdict for Mother. Following the verdict, an order was entered that eliminated Wednesday visitation and continued the previous support decree unchanged. It is from this order that Father appeals.

## CHILD SUPPORT

In the first two points of error, Father complains that the trial court erred in: (1) overruling his written objections to the failure of the charge to instruct the jury relative to the Texas Supreme Court's Child Support Guidelines (the "Guidelines"); [1] and (2) failing to submit his requested instruction informing the jury of the fundamental elements of "net resources." We find no *reversible* error in the trial court's action.

1. This case was tried under the Texas Supreme Court Child Support Guidelines, now superceded by the Family Code's Child Support Guidelines which became effective September 1, 1989. Tex.Fam.Code Ann. § 14.05(a) (Vernon Supp. 1990).

Father's motion to reduce child support set forth a number of factors forming the basis of his contention that there had been a substantial and material change in conditions. The primary thrust of his argument was that Mother's ability to support the children had increased due to an increase in her "net resources" while his income and assets had decreased. Father further asserted that his child support obligations should be set in accordance with his reduced "net resources" and the Guidelines.

In connection with the issue of child support, the court's charge and jury's response is, in relevant part, as follows:

2. "BEST INTEREST" as used in this charge, means the best interest of the children shall always be the primary consideration in determining questions of possession, support of and access to the children. Consider the circumstances of the parents in determining the best interest of the children.

To answer "Yes" it must be found that the children's best interest would be served.

3. The duty of parents to support their children after divorce corresponds in a large measure to their financial ability.

\* \* \* \* \* \*

INSTRUCTIONS AND QUESTIONS IN REGARD TO DAVID FAIR'S MOTION FOR REDUCTION OF CHILD SUPPORT

1. In order to reduce child support, you must also find that the circumstances of [children], Gretta Davis or David Fair have materially and substantially changed since the prior order.

SPECIAL QUESTION NO. 3

Should the child support be reduced?
Answer "Yes" or "No" No

In reviewing the statement of facts, we note that the attorneys were allowed to go into the nature and purpose of the Guidelines during the voir dire examination. Without objection, Father's counsel in the opening statement repeatedly discussed the Guidelines and the fact that they would be submitted to give the jury guidance in deliberating the questions presented. Thereafter, the trial court permitted a number of financial expert witnesses to present volumes of complex testimony as to "net resources" and the factors prescribed by the Guidelines in order to ascertain "net resources." The expert witnesses were able to state to the jury the range of child support which would be appropriate utilizing the formula delineated within the Guidelines. However, upon submission of the charge, the trial court refused to instruct the jury about the Guidelines or to submit a definition of "net resources." Thus, Father argues that the jury was deprived of proper guidance on the state of the law and in the absence of the Guidelines was deprived of the legal framework essential to evaluate the factors that comprise material and substantial change of conditions. Lastly, Father contends that the omission of the Guidelines' instruction deprived the jury of the ability to assign proper weight to and assess the credibility of expert testimony. We agree that under the facts of this case, the trial court failed to properly instruct the jury to the extent it failed to submit the definition of "net resources."

 It appears in the first point of error that Father is objecting to the trial court's refusal to submit an instruction on the general nature of the Guidelines and their function in determining an appropriate amount of child support. This is in fact Father's argument at the time the charge was being prepared. The record, however, does not reflect that Father tendered to the court a specific instruction in this regard. In one of Father's "Requested Special Charges," he includes an instruction as follows:

No. 18. In determining the amount of child support, you shall consider all appropriate factors, including, but not limited to, the needs of the children, the ability of the parents to contribute to the children's support, any financial resources available for the support of the children and the *schedules, guidelines and/or formulas adopted by the Court* and provided to you.

(Emphasis added.) The record does not indicate that the trial court ever ruled on this requested "Special Charge" nor is it included in Father's "Objections to the Court's Charge." Thus, Father has waived any right to complain about the trial court's failure to submit "Requested Special Charge No. 18." As to an instruction to the jury on the nature of the Guidelines and their function in determining an appropriate amount of child support, Father's objection is waived because he failed to request a definition or instruction in substantially correct wording. Tex.R.Civ.P. 278. As to requesting the Guidelines themselves, our record does not clearly demonstrate exactly what Father presented to the trial court. Assuming that Father presented and sought to have the Guidelines in their entirety presented in the charge, we hold that the trial court did not err in overruling this request. Clearly *all aspects* of the Guidelines were not relevant to the issues in this case and submission of the Guidelines in their entirety would only serve to complicate the court's charge. As the Texas Supreme Court has previously admonished: "Judicial history teaches that broad issues and accepted definitions suffice and that a workable jury system demands strict adherence to simplicity in jury charges." *Lemos v. Montez,* 680 S.W.2d 798, 801 (Tex.1984). The first point is overruled.[2]

■ In the second point of error, Father complains that the trial court erred in refusing to submit his "Requested Instruction No. 6," which informed the jury of the fundamental elements of "net resources." We agree that the trial court erred in this regard. Father's entire motion to reduce was tried on the basis of what constituted the parties' "net resources" at the time of the trial as compared to their "net resources" at the time of the entry of the September 1984 order. Father's tax returns were introduced into evidence for the relevant years together with summaries prepared by his expert converting the figures to reflect "net resources" under the

Guidelines. Mother's experts, on the other hand, took this same data and prepared summaries outlining their opinion of Father's "net resources" based upon their interpretation of the Guidelines' definition.

■ The requested legal instruction submitted by Father was the definition of "net resources" as set out in the Guidelines. The rules require a trial court to submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex.R.Civ.P. 277. Further, a court is required to submit instructions and definitions which are raised by the written pleadings and the evidence. Tex.R.Civ.P. 278. A trial court has considerable latitude in determining what instructions and definitions are necessary and proper. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974); *Durbin v. American Mfg. Co. of Texas,* 643 S.W.2d 239, 241 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). However, the trial court is required to give definitions of legal and technical terms. *Scott v. Houston Indep. School Dist.,* 641 S.W.2d 255, 257 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Rendon v. Texas Employers' Ins. Ass'n,* 599 S.W.2d 890, 896 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Without providing the required definitions, a jury is without proper guidance in its deliberations.

Having concluded that the trial court erred in failing to properly instruct the jury, we must now determine whether such error was reasonably calculated to cause *and* probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1). Mother argues that the recent Texas Supreme Court ruling in *Martin v. Martin,* 776 S.W.2d 572 (Tex.1989) negates all possibility that the trial court committed reversible error because all jury issues were advisory, giving the trial judge the ultimate authority to determine all issues. Since the jury's responses were merely advisory and no one has contended on appeal that the trial court abused its discretion in failing to reduce child support, Mother argues that

---

**2.** Because of our disposition of this point of error, it is unnecessary to discuss the role and function of the Guidelines in modification proceedings and in determining an appropriate amount of child support.

any error is harmless. Father, on the other hand, contends that *Martin* is inapplicable because this matter was tried when the courts were operating under the directives of *Phillips v. Phillips,* 701 S.W.2d 651 (Tex.1985).

Without question, prior to *Martin,* a party had an absolute right to a jury trial on the issue of whether there had been a material and substantial change in circumstances since the entry of the last order. *See Phillips,* 701 S.W.2d at 652; *Sullivan v. Sullivan,* 691 S.W.2d 9 (Tex.App.—Houston [14th Dist.] 1985, no writ). In this connection, a jury verdict on the threshold inquiry of whether an existing order should be modified was binding on the trial court. *See Taft v. Johnson,* 553 S.W.2d 408, 410 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r. e.). On the other hand, answers to questions concerning the amount of child support, the dates or times of visitation, the apportionment of rights, privileges and duties or any other specific details of the new order were advisory only. TEX.FAM. CODE ANN. § 11.13(b) (Vernon 1986).[3]

In *Martin,* the court rejected the argument that a party was entitled to a jury trial on the threshold test for modifying the terms of access to the children on the basis of its conclusion that there is no absolute right to a jury trial in matters on which the jury's answers are advisory only. Therefore, it is not reversible error for a trial court to refuse to grant a jury trial if the modification concerns the specific details of administering a prior decree. *Martin,* 776 S.W.2d at 574. Further, the court ended its discussion with the statement: "To the extent they conflict with this opinion, we overrule *Phillips,* 701 S.W.2d 651 and disapprove *Sullivan,* 691 S.W.2d 9." *Martin,* 776 S.W.2d at 575. We agree with Mother that the *Martin* decision holds that *all* issues, including the threshold inquiry of whether or not there has been a substantial and material change in conditions, are advisory upon the trial court in modifications brought under sections 14.08(c)(2) and (3). *See* Kazen, *Comment,* 7 Tex.Fam.L. Rep. (MB) 63 (Sept.1989). However, we

also agree with Father that when this trial court error occurred, he had an absolute right to have a jury determine whether child support should be reduced and was entitled to rely upon the fact that the trial court would follow the law as it existed. *See Chase Com. Corp. v. Datapoint,* 774 S.W.2d 359 (Tex.App.—Dallas 1989, no writ). Therefore, we hold that the *Martin* decision is not applicable to our case.

We conclude further, however, that the trial court's error in failing to define "net resources" was harmless in this case because of the manner in which the child support issue was submitted. The jury was instructed that "to answer 'Yes' it must be found that the children's best interest would be served," and that they "must also find" a material and substantial change of circumstances. Thus, in order to answer "Yes" to the question of whether child support should be reduced, the jury was required to find by a preponderance of the evidence that (a) it would be in the children's best interests for there to be a reduction and (b) there had been a substantial and material change in conditions. The statutory basis for modifying a support order is set forth in section 14.08(c)(2) of the Texas Family Code which provides that a movant must show that the circumstances of the child[ren] or a person affected by the order have materially and substantially changed. Assuming there has been a substantial and material change in circumstances, then the fact finder must determine whether the child support should be modified. In carrying out this duty, the fact finder is guided by the principles of section 14.07(a) which dictates that the "best interest" of the child[ren] shall always be a primary *consideration.* Section 14.08(c)(2) does not require a finding by the preponderance of the evidence that it would be in the child's best interest for there to be a modification of a support order. There is a significant difference between requiring a fact finder to *give deliberate thought* to a child's "best interest" and requiring an affirmative finding by a preponderance of the evidence that it

---

**3.** Unless otherwise noted, all sections cited here- after refer to TEX.FAM.CODE ANN. (Vernon 1986).

is in a child's "best interest." [4] Indeed, it is difficult to imagine a situation where a fact finder would affirmatively conclude that it is in the child's "best interest" for the support to be reduced. In our case, the jury by its answer that the child support should not be reduced might have concluded that it was not in the children's "best interests."

We note that there is no objection to *the instruction on best interest,* nor has Father asserted a point of error that the trial court's instruction was erroneous. Thus, this erroneous instruction cannot form the basis for reversing the judgment. *See San Jacinto River Authority v. Duke,* 783 S.W.2d 209 (Tex.1990); *Hernandez v. Montgomery Ward Co.,* 652 S.W.2d 923 (Tex.1983). We are of the opinion that the *complained of* failure to properly instruct the jury as to "net resources" did not cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). The second point of error is overruled.

### ELIMINATION OF MID–WEEK VISITATION

In the third and fourth points of error, Father challenges the legal and factual sufficiency of the evidence to support the jury's finding that the visitation should be modified. In the final point, Father contends that the trial court abused its discretion in eliminating mid-week visitation. In addition to the "Best Interest" instruction previously set out, the court's charge and jury's response concerning modification of visitation stated in relevant part:

> 4. In considering the motion to modify visitation, you are instructed that because such a change disrupts the children's living arrangements and the channels of their affection, a change should be ordered only when the jury is convinced that the change will effect a positive improvement for the children.

4. A further discussion of this increased burden is addressed in connection with disposition of

### INSTRUCTIONS AND QUESTIONS IN REGARD TO GRETTA DAVIS' MOTION TO ELIMINATE WEDNESDAY VISITATION

> 1. In order to eliminate Wednesday visitation, you must also find that:
> a) the circumstances of [children], Gretta Davis, David Fair, or [paternal grandparents] have materially and substantially changed since the prior order; or
> b) the Wednesday visitation has become unworkable or inappropriate under existing circumstances.

> SPECIAL QUESTION NO. 1
> Should the Wednesday visitation be eliminated?
> Answer "Yes" or "No" Yes

In presenting these points of error, Father first contends that Mother's evidence did not sufficiently establish the threshold tests of establishing a material and substantial change or that the order had become unworkable. However, the primary thrust of Father's argument under these points is that the evidence failed to establish that the requested modification would result in a positive improvement. It is Father's position that the "best interest" test can only be met by proving that the modification would be a "positive improvement."

Under the statute, in order to modify the terms of Father's visitation Mother had to establish either: (a) a substantial and material change in circumstances; or (b) the prior order had become unworkable; or (c) there had been a change in residence of one of the conservators to a place outside the court's jurisdiction; or (d) one of the conservators had failed to give the required notice of a change in residence to Mother. Section 14.08(c)(3). After establishing that one or more of the tests had been met, then the jury was to *consider* the "best interests" of the children in arriving at a decision of whether or not to modify Father's visitation. As we have

points three through five.

already pointed out, *weighing or taking into account* "best interest" is different from requiring an affirmative finding of "best interest." Some courts have included "best interests" as an element to be established in modifying visitation. *See B. Kazen,* 4 FAMILY LAW TEXAS PRACTICE & PROCEDURE 80–85, § 80.04[3] (1989). We do not find a statutory requirement to do so. Simply stated, an affirmative finding of "best interests" is not an statutory requisite for modifying visitation under section 14.08(c)(3). We hold that the requirement to *consider* best interest under section 14.07(a) is an instruction to give *deliberate thought to and weigh* all facts and circumstances that bear directly or indirectly on a child, including but not limited to, present or future physical, mental, emotional, educational, social, disciplinary and moral welfare, well-being, stability, and developmental needs. Likewise, a finding of positive improvement is not a requirement under this section of the code. *Cf.* Section 14.08(c)(1)(C) (positive improvement is a statutory requisite).

■■■ By failing to object to the submission of this issue, Mother has assumed the burden of a higher degree of proof and of course has waived any complaint about its submission. In considering Father's challenges in points three through five, we will review the evidence based upon the increased burden set forth in the court's charge rather than the statutory burden set forth in section 14.08(c)(3). A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). It is fundamental that these fact findings must be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v.*

*Georgetown Sav. & Loan Ass'n.,* 595 S.W.2d 486, 488 (Tex.1979). Applying these principles, we must first determine if there is evidence of probative value to support the jury's findings.

■■■ At the time of the divorce, the parties were living in Tyler, Texas, approximately 3 miles apart. In 1985, Mother remarried and moved to Canton, Texas, approximately forty-five minutes away. Because of the distance, the children are sometimes on the highway for as long as one-and-a half to two hours of the Wednesday five-hour visitation period. Another change in conditions as related by Mother was the fact that the children are older and thus there has been a substantial change in the scope of their activities. At the time of the entry of the prior order, the children were seven and four years of age. The older child's school work had increased in that she had more homework in the sixth grade as compared to the third grade. There was testimony concerning the fact that it was difficult for the children to get their homework done during the visitation periods and sometimes it had to be done in the car, either on the highway or at a roadside park. One teacher testified that the older child's attention was diverted on Thursdays and this was beginning to affect her performance at school. With the increase in age, the children began to get involved in outside activities such as piano and gymnastics. If the children participated in gymnastics, Mother explained that the girls were required to take lessons twice per week and such classes were only available on Monday and Wednesday evenings. For this reason, Mother had to schedule the classes during Father's visitation periods. Father had on some occasions refused to take the children to the activities because he decided that Mother had not made a good faith effort to schedule the various activities at other times. There was testimony concerning the fact that Father and his parents would not allow the children to practice piano during periods of visitation. Further, the evidence established a less than amicable relationship between Mother and the paternal

grandparents. Finally, the testimony established that immediately prior to trial, Father had taken a job in Philadelphia and thus would not be in a position to exercise his visitation rights. In the original decree, the paternal grandparent's were awarded specified periods of visitation together with the right to exercise all periods of visitation awarded to Father, if he was unable to do so. The grandparents' rights were not affected by the September 1984 order. Therefore, because of Father's relocation, the paternal grandparents would be exercising their specified visitation as well as the periods given to Father, including Wednesday evenings. After considering only the above evidence and inferences therefrom, we conclude that there is some evidence to support the jury's finding that the Wednesday visitation should be eliminated. Accordingly, the third point is overruled.

Now we reach the question of whether the evidence is factually sufficient to support the jury's finding. In reviewing "factually insufficient" points, we consider all of the evidence including any evidence contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). A finding can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). In carrying out this review, we are guided by the directions set out in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–36 (Tex.1986). The evidence in support of the trial court's findings is summarized above, which we will repeat only if necessary. We turn now to the evidence or summaries of the evidence contrary to the jury's finding.

Father has worked hard to maintain a close relationship with his daughters. After the move, he diligently exercised his mid-week visitation, making sure that the children were taken to all of the activities, were fed, did their homework and were returned at the time specified in the order. The prior court order required Mother to make a good faith effort not to schedule things on Wednesday evenings which would interfere with Father's visitation.

Once Mother moved to Canton, she began scheduling both piano and gymnastics lessons for both girls during Father's visitation. The result was that it was Father who provided the parental stability and supervision of the children's extracurricular activities. Father and his family have had a close, stable relationship with the children. Father participated in their activities and developed a relationship with other parents involved in the same activities. Testimony revealed that the children were happy and that even if the older child was suffering from some occasional lack of attention, her grades had not suffered. The grandparents, ages sixty-seven and sixty-six, are in relatively good health and are anxious to be able to visit with their grandchildren. There was testimony that the children enjoyed being around the grandparents and on occasion expressed that they did not want to go home. Further, there was testimony that it would be detrimental for the children to be able to be around the Fair family only every other weekend, particularly since Father would be living out of state. Finally, there was some evidence that the only opportunity the children would have to openly communicate with Father would be by telephone during the period that they would be with the grandparents.

Considering and weighing all of the evidence, we are unable to "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Pool*, 715 S.W.2d at 635. We cannot therefore hold that the jury's finding is factually insufficient. Moreover, we cannot hold that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, or that the jury's finding shocks the conscience of this Court or that the jury's finding clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635. We are not free to substitute our judgment for that of the jury simply because we might disagree with the jury's verdict. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J., concurring); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826

(Tex.App.—Dallas 1986, writ ref'd n.r.e.). We hold, therefore, that the evidence is factually sufficient to support the jury's finding and overrule the fourth point of error.

■ In the last point of error, Father asserts that the trial court abused its discretion in entirely eliminating Wednesday visitation. We disagree. The trial judge is afforded broad discretion in determining the extent of visitation to be awarded to a possessory conservator. Our standard of review is limited to a determination of whether the trial judge clearly abused his discretion by modifying the original order. *Little v. Little,* 590 S.W.2d 620, 624 (Tex.Civ.App.—Tyler 1979, no writ). In evaluating this kind of challenge, our court has previously stated:

> This discretion is wisely vested in the trial judge in these matters because he faces the parties and the witnesses, observes their demeanor, views their personalities and senses the forces and powers which motivate them. Consequently, he is in a much better position than an appellate court, who must rely on the written record alone, to assess the needs of the child and to adjudge from personal observation, which arrangement will serve the best interest of the child.

*Maixner v. Maixner,* 641 S.W.2d 374, 376 (Tex.App.—Dallas 1982, no writ) (citations omitted). Based upon the testimony outlined herein, we cannot conclude that the trial judge abused his discretion in eliminating mid-week visitation. Accordingly, we overrule the final point of error and affirm the trial court's judgment.