NO. 12-08-00231-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

                                                                          
§                   APPEAL FROM THE          

IN THE INTEREST OF

                                                                          
§                   COUNTY COURT AT LAW            

M.A.F., A CHILD

                                                                           §                   RUSK
COUNTY, TEXAS     







            MEMORANDUM
OPINION

Appellant
Stephen Freeman appeals the trial court=s
order modifying the parent-child relationship.  Stephen presents four issues. 
We reverse and render in part, modify in part, and affirm as modified in part.

 

Background

            Stephen
and Amber Freeman were divorced on March 19, 2003 and are the parents of
M.A.F., born April 18, 2000.  In the divorce decree, the trial court appointed
Stephen and Amber joint managing conservators of M.A.F.  Amber was granted the
exclusive right to establish the child’s primary residence within Rusk County,
Texas, and all contiguous counties.  The trial court ordered that Stephen have
possession of M.A.F. every other weekend beginning Friday afternoon and ending
at 7:30 p.m. the following Sunday.  During weeks in which Stephen was entitled
to a weekend period of possession, he had possession of M.A.F. from Monday
afternoon until Tuesday morning, and again from Wednesday afternoon until
Thursday morning.  During weeks in which Stephen was not entitled to a weekend
period of possession, he had possession of M.A.F. from Tuesday afternoon until
Wednesday morning, and again from Thursday afternoon until Friday morning. 
Further, Stephen was ordered to pay child support to Amber.  On June 25, 2004,
the trial court signed an order (the “2004 order”) to modify the parent-child
relationship. Pursuant to a mediated settlement agreement, the trial court
ordered that Stephen’s weekend visitation be extended to allow him to return
M.A.F. on Monday morning at either the day care facility or school where the
child was currently enrolled. 

On
November 16, 2005, Stephen filed a petition to modify the parent-child
relationship stating that the order to be modified was the final decree of
divorce rendered on March 19, 2003.  He cited changed circumstances as the
reason for the modification.  Stephen requested that he be appointed the person
with the right to designate M.A.F.’s primary residence and to receive child
support. 

In
an affidavit attached to the petition to modify, Stephen stated that the facts
in the affidavit were within his personal knowledge and were true and correct. 
His affidavit included several allegations against Amber including that she was
mentally and emotionally unstable, and was abusing alcohol and prescription
drugs to the point of passing out in her residence while she had possession of
the child.  He also stated that Amber had violated the trial court’s order
regarding persons of the opposite sex.  In conjunction with his petition to
modify, Stephen also requested enforcement of the terms of possession and order
to appear, alleging that Amber had failed to comply with the terms of the
permanent injunction contained in the decree of divorce regarding overnight
adult guests of the opposite sex.

On
June 20, 2006, Amber filed a counter petition to modify the parent-child
relationship, alleging changed circumstances since the date of the signing of
the mediated settlement agreement on which the 2004 order was based, and that
the modification was in the child’s best interest.  She requested that
Stephen’s periods of possession be modified and limited to conform to a
standard possession order, and that the support payments previously ordered
should be increased.  She also requested attorney’s fees, costs, and expenses. 
On October 22, 2007, Stephen nonsuited all of his claims for affirmative
relief.  In the affidavit attached to the nonsuit, he stated that the previous
affidavit was executed in good faith, but that he realized the information upon
which it was based was incorrect.  He “recanted” the statements in his previous
affidavit.

On
November 13, 2007, the trial court held a hearing on Amber’s petition to
modify. During the hearing, Amber elected not to pursue her claim to increase
or modify child support. On March 5, 2008, the trial court signed an order to
modify, finding that Stephen’s initial suit was without merit; that the
material allegations in Amber’s counter petition were true; that the
circumstances of the child, a conservator, or other party affected by the order
had materially and substantially changed; and that modification was in the best
interest of the child. The trial court appointed Amber and Stephen as joint
managing conservators of the child with Amber having the exclusive right to
designate M.A.F.’s primary residence.  Stephen was given possession of the
child pursuant to a standard possession order.  Because the trial court found
that Stephen’s initial suit was without merit, it also found good cause existed
to award Amber attorney’s fees, expenses, and costs in the amount of
$12,287.00.  The trial court found that Amber’s attorney’s fees and costs were
incurred in connection with the initial suit and were in the nature of child
support. 

Stephen
filed a motion for new trial and, after a hearing, the trial court denied his
motion. The trial court also filed findings of facts and conclusions of law. 
This appeal followed.

 

Modification

In
his first issue, Stephen contends that the trial court abused its discretion in
modifying his visitation because the evidence was legally and factually
insufficient to support Amber’s allegations of changed circumstances. 

Standard
of Review

In
an appeal of a judgment rendered after a bench trial, the trial court’s
findings of fact have the same weight as a jury’s verdict.  In re K.R.P.,
80 S.W.3d 669, 673 (Tex. App.–Houston [1st Dist.] 2002, pet. denied).  Findings
may be overturned only if they are so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  Ortiz
v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).  However, when an appellate
record contains a reporter’s record, findings of fact are not conclusive on
appeal if the contrary is established as a matter of law or if there is no
evidence to support the finding.  Material P’ships, Inc. v. Ventura,
102 S.W.3d 252, 257 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).  We
review the trial court’s conclusions of law de novo.  Id.  The
standard of review for conclusions of law is whether they are correct. Id.
 We will uphold conclusions of law on appeal if the judgment can be sustained
on any legal theory the evidence supports.  Id.  Thus, incorrect
conclusions of law do not require reversal if the controlling findings of fact
support the judgment under a correct legal theory.  Id.  A trial
court=s modification
of conservatorship is reviewed for abuse of discretion.  In re P.M.B.,
2 S.W.3d 618, 621 (Tex. App.–Houston [14th Dist.] 1999, no pet.).  It is an
abuse of discretion for a trial court to rule without supporting evidence.  Id. 
Under an abuse of discretion standard, the legal and factual sufficiency of the
evidence are not independent grounds of error, but are relevant facts in
assessing whether the trial court abused its discretion.  In re Ferguson,
927 S.W.2d 766, 769 (Tex. App.–Texarkana 1996, no writ).  In the absence of
such a clear abuse of discretion, an appellate court should not substitute its
judgment for that of the trial court.  Id.

Applicable
Law

The
best interest of the child is the primary consideration in determining
conservatorship or residency of a minor child.  Villasenor v. Villasenor,
911 S.W.2d 411, 419 (Tex. App.–San Antonio 1995, no writ).  According to
section 156.101 of the Texas Family Code, the trial court may modify an order
that provides for the appointment of a conservator of a child, that provides
the terms and conditions of conservatorship, or that provides for the
possession of or access to a child. Tex.
Fam. Code Ann. § 156.101 (Vernon 2008). However, the court must
conclude that modification would be in the best interest of the child and that the
circumstances of the child, a conservator, or other party affected by the order
have materially and substantially changed since the earlier of the date of the
rendition of the order or the date of the signing of a mediated or
collaborative law settlement agreement on which the order is based.  Tex. Fam. Code Ann. § 156.101. 

Whether
there has been a material and substantial change of circumstances affecting the
child is normally to be determined by an examination of the evidence of changed
circumstances occurring between the date of the order or judgment sought to be
modified and the date of the filing of the motion to modify.  Gibbs v.
Greenwood, 651 S.W.2d 377, 379 (Tex. App.–Austin 1983, no writ).  The
moving party must show what material changes have occurred in the intervening
period and the record must contain both historical and current evidence of the
relevant circumstances.  Zeifman v. Michels, 212 S.W.3d 582, 589,
594 n.1 (Tex. App.–Austin 2006, pet. denied).  Without both sets of data, the
court has nothing to compare and cannot determine whether a change has
occurred.  Id. at 594 n.1.

A
court’s determination as to whether a material and substantial change of
circumstances has occurred is not guided by rigid rules and is fact specific.  Id.
at 593.  Further, the policy behind the requirement of a material and
substantial change is to prevent constant relitigation with respect to children
and to attempt to create stability in the conservatorship.  Id.
at 595.  If a circumstance was contemplated at the time of an original
agreement, its eventuality is not a changed circumstance, but instead an
anticipated circumstance that cannot be evidence of a material or substantial
change of circumstances.  See Hoffman v. Hoffman, No.
03-03-00062-CV, 2003 WL 22669032, at *6 (Tex. App.–Austin Nov. 13, 2003, no
pet.) (mem. op.).  Change in the age of a child may constitute a material
change, but an increase in age alone is not a changed circumstance to justify
modification unless changed needs are shown.  Zeifman, 212 S.W.3d
at 593.  Courts have consistently required that a change be proved and that it
be shown to be material and substantial.  See e.g., id. at
594-95 (finding no change in circumstances because the child’s change of age
and school were contemplated by an agreement between the parties); Hoffman,
2003 WL 22669032, at *6 (finding no change because the mother’s move was
anticipated by the parties).

Findings
of Fact and Conclusions of Law

In
its findings of fact, the trial court found as follows:

 

1.      
That the material allegations in
Amber’s petition to modify filed on June 20, 2006 are true and correct.

 

2.      
That the circumstances of the
child, a conservator, or person affected by the order sought to be modified
have materially and substantially changed since the order was rendered.

 

3.      
That it is in M.A.F.’s best
interest that Amber and Stephen be appointed joint managing conservators, and
that Amber have the exclusive right to designate M.A.F.’s primary residence.

 

4.      
That the modification order rendered
in this cause is in M.A.F.’s best interest.

 

5.      
That the periods of possession [should]
comply with the standard possession order.

 

6.      
That Stephen’s petition to modify
the parent-child relationship filed on November 16, 2005 was without merit and
was filed frivolously or was designed to harass Amber.

 

7.      
That the amount of $12,287.00,
representing Amber’s attorney’s fees and costs in connection with her defense
against Stephen’s suit, is fair, reasonable, and necessary, and was incurred in
relation to the child and in the nature of child support. 

 

8.      
That any finding of fact that is a
conclusion of law shall be deemed a conclusion of law.

 

 

 

In its conclusions of law, the trial court concluded
as follows:

1.      
Amber and Stephen should be named
joint managing conservators of M.A.F. with the rights and duties stated in the
judgment, and Amber should be named as the conservator with the right to
designate M.A.F.’s primary residence.

 

2.      
Stephen is entitled to periods of
possession with M.A.F. pursuant to the standard possession order as outlined in
the judgment.

 

3.      
The attorney’s fees and costs
incurred by Amber in defense of the petition to modify filed by Stephen on
November 16, 2005 are taxed as costs against Stephen as stated in the judgment.

Analysis

At
trial, Amber contended that there were material and substantial changes in the
circumstances affecting the child that warranted modification of the 2004
order.  After reviewing the evidence, we note that Amber’s contentions focused
on alleged changes in four areas.

Travel
required by visitation schedule.  Amber stated that she did not want
M.A.F. to be a “suitcase kid,” going from one house to the next every other
day.  Amber stated that M.A.F. does not refer to things as being her own, and
that she wants M.A.F. to have a home in one place where she can sit down during
the week and do her homework and activities.  According to Amber, she and
Stephen live in separate towns, and it is approximately forty-five minutes from
Stephen’s residence to M.A.F.’s school.  She did not like the idea of her child
being on the road every other day and explained that it was a safety issue for
her.  Amber believes it puts a huge strain on M.A.F. going back and forth, and
being in a divorced family.  However, she admitted that at the time of the 2004
order, she knew M.A.F. was going to get older, that she would be going to
school, and that she would be living with divorced parents.  Further, at the
time of the 2004 order, Amber admitted that the travel issue existed, that she
was living in Longview, and that she knew Stephen would have to travel to and
from Henderson.  

Because
the travel issue existed at the time of the 2004 order and Amber anticipated
that M.A.F. would get older and be in school, the travel schedule is not a
changed circumstance.  Instead, it is an anticipated circumstance that cannot
be evidence of a material and substantial change of circumstances.  See Hoffman,
2003 WL 22669032, at *6.

M.A.F.’s
activities. Amber stated that it took “tooth and nail” to get M.A.F.
enrolled in gymnastics because Amber and Stephen fought about it.  According to
Amber, M.A.F. has skipped weekly gymnastics practices several times during the
summer months because Stephen forgot or did not manage to go to Longview.  Amber
believed that under a standard possession order, she would be better able to
get M.A.F. to gymnastics practice during the week.  Amber stated that M.A.F.
was missing out on things and that she did not want their poor decisions to
hurt M.A.F.  Amber stated that M.A.F. was a little girl “coming into her own,”
and that she wanted to experience activities with friends.  Amber testified
that these issues were not a problem at the time she agreed to the 2004 order.  

Amber
also mentioned soccer as a possible extracurricular activity for M.A.F.
However, Amber admitted that she never asked Stephen to put M.A.F. in soccer.  According
to Stephen, he first heard about M.A.F. participating in soccer at Amber’s
deposition.  Before that date, Amber had never requested that M.A.F.
participate in soccer, nor had he heard M.A.F. say that she wanted to play
soccer. He thought that it was understood, verbally at least, that he would
honor whatever extracurricular activities M.A.F. had or would have.

In
sum, Amber complained that Stephen sometimes forgot about or did not get M.A.F.
to gymnastics practice in the summer.  However, she did not elaborate on how
often M.A.F. missed practices or whether Stephen habitually forgot or refused
to take M.A.F. to gymnastics. See Fair v. Davis, 787 S.W.2d 422,
429-30 (Tex. App.—Dallas 1990, no writ) (finding some evidence to support
eliminating Wednesday visitation because children increased in age, began to be
involved in piano and gymnastics, Father had on some occasions refused to take
children to activities because he decided Mother had not made good faith effort
to schedule activities at different times, and Father would not let children
practice piano during his visitation). She also stated that M.A.F. wanted to
experience activities with friends, but did not indicate what these activities
were, how the visitation schedule prevented M.A.F. from participating in these
activities, or how this was a changed circumstance. See In re K.T.W.,
No. 05-08-01416-CV, 2010 WL 716417, at *3 (Tex. App.—Dallas Mar. 3, 2010, no
pet.) (mem. op.) (no evidence of material and substantial change where
complaint related to only one extracurricular activity and activity had been
rearranged to accommodate visitation; no other evidence relating to any other scheduling
conflicts or difficulties). Thus, Amber’s testimony is not evidence of a
material and substantial change of circumstances.  See Zeifman,
212 S.W.3d at 594-95.

Stephen’s
inflexibility. Amber acknowledged that she testified in her deposition that
she and Stephen had made the best of the visitation schedule over the past four
years, and that they had worked well together for the most part.  She stated
that before Stephen filed his petition to modify on November 16, 2005, they
communicated very well. Amber described the tone of the emails they exchanged
as “being very polite.” Amber initially stated that after Stephen filed suit, he
became inflexible.  She later stated that he did not become inflexible until
after she divorced a former husband in August 2005. Amber testified further that
she and Stephen were at the point where they were not communicating.  Amber’s
former husband confirmed that during his marriage to Amber from 2004 to 2005,
Stephen was constantly in a dispute with Amber. In a 2007 report, a licensed
professional counselor stated that Amber told him she was concerned about their
inability to make decisions together and that she could not put M.A.F. in
gymnastics for nearly a year because Stephen did not want to sacrifice any time
with M.A.F.  

Amber
admitted at trial, however, that in recent months, Stephen had become more
flexible regarding M.A.F.’s schedule. Amber’s concern was that she did not believe
Stephen would continue to be flexible and thought he would “go right back to
the way things were.” She stated that the current possession schedule would
work only if she and Stephen work well together. From this testimony it appears
that Amber’s only complaint related to Stephen’s possible future behavior. This
is not evidence of a material and substantial change of circumstances.  See Zeifman,
212 S.W.3d at 594-95.

Safety
concerns. According to Amber, Stephen bought M.A.F. a four wheeler and
M.A.F. told her Stephen had allowed her to ride it without proper head gear.  Amber
introduced two pictures at trial showing M.A.F. riding a four wheeler.  In one
picture, she was wearing a bicycle helmet, and in the other, she was wearing a
dirt bike helmet. Amber objected to M.A.F.’s riding a four wheeler without
proper equipment because she was “scared to death [M.A.F. was] going to have an
accident and get hurt.”  Stephen admitted that M.A.F. rode an adult four
wheeler once without a helmet.  He stated that M.A.F. used a bicycle helmet
immediately after he purchased the four wheeler.  Stephen maintained that
otherwise M.A.F. had always worn a dirt bike helmet while riding her four
wheeler.  He stated that M.A.F. rode her four wheeler at a camp house and had
never been unsupervised.  A family friend stated that M.A.F. rode her four
wheeler at her mother’s camp house, and none of the children were unsupervised.
 The counselor reported that M.A.F. told him she received a four wheeler from
Stephen and that even though she had a helmet, she did not wear it.

Amber
also complained that Stephen allowed M.A.F. to shoot a machine gun. Stephen
admitted that he owned a fully automatic .22 caliber machine gun.  He allowed
M.A.F. to fire it once at the East Texas Rifle and Pistol Club while she was
sitting in his lap and wearing ear protection.  According to the family friend,
M.A.F. and her daughter shot machine guns while their fathers held the guns.  However,
Amber admitted that she was not requesting that the trial court suspend
Stephen’s possession or charge him with negligent supervision in connection
with either the four wheeler or the machine gun.

Even
though it may be troubling that Stephen allowed M.A.F. to ride a four wheeler
without a helmet and to shoot a machine gun, the evidence relating to these
matters does not rise to the level necessary to show a material and substantial
change of circumstances.  See id.

Conclusion

From
this evidence and the record as a whole, the trial court could not have
reasonably concluded that the travel required by the visitation schedule,
M.A.F.’s activities, Stephen’s alleged inflexibility, and Amber’s safety
concerns constituted a material and substantial change of circumstances since
the 2004 order.  See Gibbs, 651 S.W.2d at 379.  Therefore, the
trial court abused its discretion in finding that the material allegations in
Amber=s petition to
modify were true.  Because we have determined that the trial court abused its
discretion in finding a material and substantial change of circumstances, it is
unnecessary for us to determine whether modification would be in M.A.F.’s best
interest.  See Tex. Fam. Code
Ann. § 156.101.  Accordingly, we sustain Stephen’s first issue. 

 

Frivolous Finding

            In
his third issue, Stephen contends that the trial court abused its discretion in
finding that his modification suit was filed frivolously and designed to harass
Amber, and in awarding attorney’s fees, because there was no evidence to
support the finding.  He also argues that the amount awarded to Amber is
incorrect. Amber disagrees.

Applicable
Law

If
a trial court finds that a suit for modification is filed frivolously or is
designed to harass a party, the court shall tax attorney’s fees as costs
against the offending party. Tex. Fam.
Code Ann. § 156.005 (Vernon 2008).  The standard of review on appeal is
abuse of discretion.  Warchol v. Warchol, 853 S.W.2d 165, 169
(Tex. App.–Beaumont 1993, no writ).

Finding of
Frivolous Filing

The
trial court determined that Stephen’s petition to modify the parent-child
relationship filed on November 16, 2005 was without merit and was filed
frivolously or was designed to harass Amber.  Amber testified that shortly
before Stephen filed his petition to modify, she ended a dating relationship
with Richard Williams.  Afterwards, Williams began harassing her, making
unwanted telephone calls and leaving messages on the telephone. Amber testified
that a message from Williams left on her answering machine and the allegations
in Stephen’s affidavit were identical.  She stated that when a temporary
hearing had been scheduled on Stephen’s petition to modify, she gave the recorded
message from Williams to her attorney and authorized him to play it for
Stephen’s attorney.  Amber’s attorney testified that eighty percent of his
time, court costs, and expenses were attributable to defending Amber against
Stephen’s petition to modify.  He stated that Amber’s attorney’s fees and costs
total $12,934.02, not including his time spent at trial and $800.00 incurred
for the counselor’s recent assessment.

Stephen
stated that he filed the petition to modify based on information provided to him
by Williams.  He testified that Williams called him “out of the blue,”
introduced himself, and said that there were some things he needed to tell
Stephen.  Stephen was extremely concerned about Williams’s allegations and
requested that his attorney file a petition to modify.  However, he never
pursued the petition for emergency relief or tried to obtain temporary custody
of M.A.F.  Stephen testified that he and his attorney investigated Williams’s
assertions and ultimately discovered that Williams was apparently trying to get
revenge on Amber because she ended their relationship.  Stephen testified that
he no longer believed Amber was a junkie, a negligent parent, or mentally
unstable.  He also stated that Williams’s being charged and convicted for harassment
caused him not to believe Williams’s assertions.  However, he knew that Amber
filed a complaint against Williams either the day that he filed his petition to
modify or the day after. 

Stephen
admitted that even after he learned of Williams’s motives, he developed various
theories, took depositions, and propounded discovery.  Stephen was aware that
Amber’s attorney had played the tape recording containing Williams’s threats
for his attorney.  Although he could not recall, he did not disagree that this occurred
about one year and ten months before trial.  Stephen was asked why he waited a
year and a half after finding out about the tape recording before nonsuiting
his initial petition and revoking his affidavit.  In response, he invoked the
attorney-client privilege.  He believed that Amber should pay the costs of
defending his petition to modify because he filed it in good faith even though
he agreed that she had to defend herself against these allegations. Stephen
knew that his petition to modify was based upon incorrect assertions soon after
he filed his petition to modify, but continued to pursue his suit for almost
two years. Thus, the trial court did not abuse its discretion in determining
that his suit for modification was filed frivolously or designed to harass
Amber and awarding her attorney’s fees and costs.  See Tex. Fam. Code Ann. § 156.005; Warchol,
853 S.W.2d at 169. 

 

Attorney’s
Fees

Stephen
also complains that the trial court abused its discretion in determining the
amount of attorney’s fees, arguing that Amber’s attorney testified that the
attorney’s fees and costs totaled $12,934.00.  In its letter ruling before signing
the order to modify, the trial court found that the amount that should be
awarded to Amber for attorney’s fees and costs was eighty percent of
$15,359.00, or $12,287.00.  Amber’s attorney testified that his fees and costs
totaled $12,934.02, but that this amount did not include his time spent at
trial or an additional $800.00 incurred for the counselor’s recent assessment.
The record is silent regarding how the trial court determined that Amber’s
attorney’s fees and costs totaled $15,359.00.  However, Stephen failed to
object to the amount of attorney’s fees and costs after the letter ruling. 

As
a prerequisite to presenting a complaint for appellate review, the record must
show that the complaint was made to the trial court by a timely request,
objection, or motion that stated the grounds for the ruling that the
complaining party sought with sufficient specificity to make the trial court
aware of the complaint.  Tex. R. App. P.
33.1(a)(1)(A).  Because Stephen did not object to the amount of the
attorney’s fees and costs awarded to Amber, he has waived this argument.

Conclusion

            For
the foregoing reasons, we overrule Stephen’s third issue.

 

Attorney’s Fees as Child Support

            In
his fourth issue, Stephen argues that the trial court improperly characterized
the award of attorney’s fees against him as being incurred in relation to the
child and in the nature of child support.  Amber contends that both of their
petitions to modify sought a modification of child support.  The trial court
stated that the amount of $12,287.00, representing Amber’s attorney’s fees and
costs in connection with her defense against Stephen’s suit, is fair, reasonable,
and necessary, and was incurred in relation to the child and in the nature of
child support. We review the trial court’s conclusion of law de novo.  In
re Moers, 104 S.W.3d 609, 611 (Tex. App.–Houston [1st Dist.] 2003, no
pet.).  Attorney’s fees and costs may not be taxed or characterized as child
support when they are incurred in a suit brought to modify the parent-child
relationship that does not involve the enforcement of a child support
obligation.  Id.; see also Finley v. May,
154 S.W.3d 196, 199 (Tex. App.–Austin 2004, no pet.).

Here,
neither Stephen’s nor Amber’s petition to modify alleged enforcement of a child
support obligation.  In fact, Stephen’s petition requesting a change in child
support was nonsuited, and at trial, Amber elected not to pursue her claim to
increase or modify child support.  Because neither petition to modify the
parent-child relationship involved enforcement of a child support obligation,
the trial court erred in characterizing the attorney’s fees and costs awarded to
Amber as child support.  Accordingly, we sustain Stephen’s fourth issue.

 

Conclusion

The
trial court abused its discretion in finding that the material allegations in
Amber=s petition to
modify were true. The trial court did not err in finding that Stephen’s
modification suit was filed frivolously and designed to harass Amber, or in
awarding attorney’s fees and costs to Amber. The trial court erred, however, in
characterizing the attorney’s fees and costs awarded to Amber as child support.
 

Accordingly,
we reverse the portion of the trial court’s March 5, 2008 order
granting Amber’s petition to modify and render judgment denying the
petition. We modify the trial court’s March 5, 2008 order by deleting
the beginning of the third sentence in the section entitled “Attorney’s
and Ad Litem Fees” as follows:

 

IT IS ORDERED that the attorney’s fees, expenses, and
costs, which were incurred in relation to the child, are in the nature of child
support, and . . . .

 

 

            As modified,
we affirm the trial court’s March 5, 2008 order as to the award
of attorney’s fees and costs to Amber.  Because we have sustained Stephen’s
first issue, we need not address his second issue regarding extended visitation
provisions.  See Tex. R. App. P. 47.1.

 

                                                                                                Sam Griffith

                                                                                                 
    Justice

 

 

Opinion delivered May 28, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

(PUBLISH)